IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| GLYNN DALE SISTRUNK and LAWANA ANN SISTRUNK, | § § § | C.A. No. 5:18-cv-00516-EEF-MLH |
| Plaintiffs, | § § | |
| | § | JUDGE FOOTE |
| v. | § § | |
| | § | MAGISTRATE JUDGE HORNSBY |
| GREGORY LAMAR HADDOX and LINCOLN FINANCIAL ADVISORS CORPORATION, | § § § § | |
| Defendants. | § § | JURY DEMANDED |

**DEFENDANT LINCOLN FINANCIAL ADVISORS CORPORATION'S
MOTION TO COMPEL AND SUPPORTING BRIEF**

Andrew C. Whitaker (pro hac vice)
Texas Bar No. 21273600
andrew.whitaker@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

Robert A. Dunkelman
Louisiana Bar No. 18189
rdunkelman@padwbc.com

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY BYRD & CROMWELL, L.L.P.
400 Texas Street, Suite 400 (71101)
P.O. Box 1786
Shreveport, Louisiana 71166-1786
(318) 221-1800
(318) 226-0390 (telecopy)

ATTORNEYS FOR DEFENDANT
LINCOLN FINANCIAL ADVISORS
CORPORATION

# <u>TABLE OF CONTENTS</u>

I.    NATURE OF THE ACTION ................................................................................... 1

II.   BACKGROUND FACTS ....................................................................................... 2

    A.   Plaintiffs ended their relationships with LFA by mid-2008,
        and Haddox terminated his relationship with LFA in mid-2009 ................................. 2

    B.   Plaintiffs institute this action against LFA and Haddox ................................. 3

    C.   LFA serves the Discovery Requests, and Plaintiffs serve
        the Responses................................................................................................ 3

    D.   LFA attempts, without success, to resolve the deficiencies
        in the Responses........................................................................................... 4

III.  ARGUMENT ........................................................................................................ 4

    A.   Standards for discovery................................................................................. 4

    B.   LFA is entitled to complete information and documents
        regarding Plaintiffs' alleged damages........................................................... 5

    C.   LFA is entitled to complete information and documents
        regarding Plaintiffs' investments and alleged losses .................................... 7

    D.   LFA is entitled to complete information regarding the
        documents that Haddox allegedly altered or forged .................................... 9

    E.   LFA is entitled to complete information regarding the
        documents that Haddox allegedly misdirected ........................................... 11

    F.   Many of Plaintiffs' requests for production responses are deficient ......................... 12

        1.   Annuity contracts ............................................................................. 12

        2.   Account documents........................................................................... 12

        3.   Agreements with LFA....................................................................... 13

        4.   Account statements and tax returns ................................................. 14

        5.   Online access to accounts ................................................................ 15

        6.   Complaints to LFA ........................................................................... 17

    G.   Many of Plaintiffs' requests for admissions responses are deficient........................ 18

    H.   LFA is entitled to recover its expenses, including
        attorneys' fees, from Plaintiffs...................................................................... 22

IV.  CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*,
  61 F.R.D 115 (N.D. Ga. 1972)...........................................................................8

*Continental Illinois Nat'l Bank & Trust Co. v. Caton*,
  136 F.R.D. 682 (D. Kan. 1991).........................................................................7

*Green v. Fulton*,
  157 F.R.D. 136 (D. Me. 1994).........................................................................15

*Henderson v. Zurn Indus., Inc.*,
  131 F.R.D. 560 (S.D. Ind. 1990)......................................................................15

*King v. E.F. Hutton & Co.*,
  117 F.R.D. 2 (D.D.C. 1987).............................................................................7

*Mulero-Abreu v. Puerto Rico Police Dep't*,
  675 F.3d 88 (1st Cir. 2012)..............................................................................8

*Prokosch v. Catalina Lighting, Inc.*,
  193 F.R.D. 633 (D. Minn. 2000).....................................................................15

*Rodriguez-O'Ferral v. Trebel Motors Corp.*,
  154 F.R.D. 33 (D.P.R. 1994), *aff'd*, 45 F.3d 561 (1st Cir. 1995) ..........................13

*Triple Five of Minnesota, Inc. v. Simon*,
  212 F.R.D. 523 (D. Minn. 2002).....................................................................15

**Statutes and Rules**

15 U.S.C. § 78.............................................................................................................3

Fed. R. Civ. P. 11..............................................................................................10, 21

Fed. R. Civ. P. 26(a)(1)(A)(iii) ................................................................................7

Fed. R. Civ. P. 26(b)(1)...........................................................................................4

Fed. R. Civ. P. 26(e)(1)..........................................................................................10

Fed. R. Civ. P. 33.....................................................................................................8

Fed. R. Civ. P. 33(d)................................................................................................8

Fed. R. Civ. P. 34(a)...............................................................................................15

Fed. R. Civ. P. 36(a)(1)(B) ............................................................................................18

Fed. R. Civ. P. 36(a)(4) ..................................................................................................18

Fed. R. Civ. P. 37(a)(5) ............................................................................................22, 23

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| GLYNN DALE SISTRUNK and LAWANA ANN SISTRUNK, | § § § | C.A. No. 5:18-cv-00516-EEF-MLH |
| Plaintiffs, | § § § | |
| v. | § § | JUDGE FOOTE |
| | § | MAGISTRATE JUDGE HORNSBY |
| GREGORY LAMAR HADDOX and LINCOLN FINANCIAL ADVISORS CORPORATION, | § § § § | |
| Defendants. | § § | JURY DEMANDED |

### DEFENDANT LINCOLN FINANCIAL ADVISORS CORPORATION'S MOTION TO COMPEL AND SUPPORTING BRIEF

Defendant Lincoln Financial Advisors Corporation ("LFA") files this motion to compel and supporting brief against Plaintiffs Glynn Dale Sistrunk ("Glynn") and Lawana Ann Sistrunk ("Lawana") (collectively, "Plaintiffs") and states:

## I.    NATURE OF THE ACTION

This is a suit in which LFA does not belong.  In this action, Plaintiffs complain of the conduct over time of Defendant Gregory Lamar Haddox ("Haddox")[1] with respect to several annuities that Plaintiffs purchased directly from Allianz Life Insurance Company of North America, Jackson National Life Insurance Company, and National Western Life Insurance Company (collectively, the "Annuity Issuers").  Glynn had a brokerage account with LFA from July 2001 until May 31, 2008 ("Glynn's LFA Account"), when he closed that account after having withdrawn all of the assets from it. None of the complained-of products that Plaintiffs

---

[1] According to the Amended and Restated Complaint and Request for Jury Trial (the "Amended Complaint"), Haddox "was a professed insurance agent, securities broker and dealer and investment advisor," and LFA is "a licensed securities broker and dealer, as well as a licensed investment advisor." Document 9 (Amended Complaint), ¶ 2[a]-[b].

purchased from the Annuity Issuers were ever held in Glynn's LFA Account.   Moreover, Lawana never had a brokerage account with LFA.   Following the cessation of any relationship between Plaintiffs, on the one hand, and LFA, on the other hand, Haddox terminated his affiliation with LFA effective July 10, 2009, meaning that LFA cannot have any responsibility for any of his alleged conduct after that date.   Plaintiffs have repeatedly been informed of these undisputed facts, yet they have persisted in asserting meritless claims against LFA.

Among other allegations, Plaintiffs contend that Haddox forged their signatures on certain documents, improperly altered documents after Plaintiffs had signed them, prepared falsified account documents, misdirected communications intended for Plaintiffs to his home address, and purchased financial products without Plaintiffs' knowledge or consent.   As part of its efforts to establish the lack of merit in their claims, LFA served Plaintiffs with requests for admissions, interrogatories, and requests for production, and through those discovery requests, LFA sought to get insight into the *specific* complaints that Plaintiffs have against Defendants and the *specific* documents that Plaintiffs contend were mishandled, whether through forgery, alteration, misdirection, or otherwise.   Unfortunately, however, Plaintiffs' responses are deficient in numerous respects, thus necessitating this motion.

## II.       BACKGROUND FACTS

### A.       Plaintiffs ended their relationships with LFA by mid-2008, and Haddox terminated his relationship with LFA in mid-2009.

In the Amended Complaint, Plaintiffs repeatedly allege that Defendants engaged in various acts of misconduct during the period from 2005 until 2018,[2] most (if not all) of which involved products from the Annuity Issuers.   In actuality, however, Glynn closed his brokerage account with LFA by no later than May 31, 2008, and Lawana *never* had a brokerage account in

---

[2] Document 9 (Amended Complaint), ¶¶ 15-126.

her name with LFA.  In addition, Haddox's registration with LFA terminated effective July 10, 2009.[3]  As such, Plaintiffs' repeated allegations that "Defendants" engaged in misconduct[4] are wholly without merit insofar as they pertain to LFA, and any claims they might have had against LFA were long ago prescribed.

**B.**      **Plaintiffs institute this action against LFA and Haddox.**

Notwithstanding the absence of any proof that LFA engaged in actionable misconduct, on April 16, 2018, Plaintiffs filed this action against Haddox and LFA.  In the Amended Complaint, Plaintiffs assert causes of action against Defendants for (1) negligence, (2) breach of trust and fiduciary duties, (3) deception/deceptive trade practices in violation of the Texas DTPA, (4) violations of the Louisiana blue sky laws, (5) misrepresentation, (6) fraud, (7) unjust enrichment, (8) breach of contract, (9) civil conspiracy, (10) violations of the Texas Securities Act, (11) violations of the Securities Act of 1934, 15 U.S.C. § 78, and (12) vicarious liability/respondeat superior.  Plaintiffs do not allege any specific acts of misconduct allegedly performed by LFA; instead, they seek to hold LFA liable for some or all of Haddox's alleged conduct under the doctrines of vicarious liability and respondeat superior.

**C.**      **LFA serves the Discovery Requests, and Plaintiffs serve the Responses.**

On October 18, 2018, LFA served Plaintiffs with Defendant Lincoln Financial Advisors Corporation's First Set of Requests for Admissions, Interrogatories, and Requests for Production to Plaintiffs (the "Discovery Requests").[5]  On November 12, 2018, Plaintiffs served LFA with Plaintiff's Responses to Requests for Admissions of Defendant, Lincoln Financial Advisors Corporation, and Plaintiffs' Responses to Interrogatories and Requests for Production of

---

[3] Attached hereto as Exhibit A are true and correct copies of LFA's letter dated May 18, 2009, memorializing the termination of Haddox's securities registration with LFA and the related Form U5, which shows that his voluntary termination was effective July 10, 2009.

[4] Document 9 (Amended Complaint), ¶¶ 32-123.

[5] A true and correct copy of the Discovery Requests is attached hereto as Exhibit B.

Documents of Defendant, Lincoln Financial Advisors Corporation (collectively, the "Responses").[6]

**D.      LFA attempts, without success, to resolve the deficiencies in the Responses.**

By letter dated November 30, 2018, LFA's counsel pointed out many of the deficiencies in the Responses and gave Plaintiffs until December 13, 2018, to comply with their discovery obligations.[7]   Plaintiffs did not take any corrective action by that date, so LFA's counsel sent their counsel, David Szwak ("Szwak"), follow-up emails on December 14 and 15, 2018.[8]   To date, however, Plaintiffs have not addressed any of the deficiencies identified by LFA, thus necessitating this motion.

## III.      ARGUMENT

**A.      Standards for discovery.**

Fed. R. Civ. P. 26(b)(1) provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[9]

As set forth below, the information and documents sought herein by LFA satisfy this standard and must be disclosed.

---

[6] True and correct copies of Plaintiffs' requests for admissions responses and their combined interrogatory answers and requests for production responses are attached hereto as Exhibits C and D, respectively.

[7] A true and correct copy of this letter is attached hereto as Exhibit E.

[8] True and correct copies of these emails are attached hereto as Exhibit F.

[9] Fed. R. Civ. P. 26(b)(1). Unless otherwise indicated, all subsequent references to Rules are to the Federal Rules of Civil Procedure.

**B.      LFA is entitled to complete information and**
         <u>documents regarding Plaintiffs' alleged damages</u>.

Initially, Plaintiffs' answers to Interrogatories No. 2 and 3 and response to Request for

Production No. 55 and 56 regarding their alleged damages (including their claim for attorney's

fees) are insufficient and require supplementation.  For example, in Interrogatory No. 2, LFA

sought information regarding the damages Plaintiffs allegedly incurred as a result of LFA's

conduct, yet Plaintiffs did not provide any useful information:

<u>INTERROGATORY NO. 2:</u>

State the amount, nature, and source of any and all damages you contend
you have suffered or incurred as a result of the actions, conduct, or omissions of
LFA, setting forth each of the elements of any and all monetary damages that you
claim. In addition, please describe in detail the manner in which you calculated
such damages and the bases for your calculations.

<u>ANSWER:</u>

Plaintiffs object to this request as premature, in part, and calling for
speculation on plaintiffs' part, in part. Plaintiffs have engaged an expert, Bob
Lawson, who is expected to testify about damages, as well as plaintiffs' CPA, as
an expert; as well as plaintiffs and others as laypersons. Plaintiffs are presently
considering an additional expert to further address damages and will disclose
same as soon as possible and if need be. Subject to those objections, plaintiffs
respond: Plaintiffs disclosed a good faith estimate based on their layperson
perspective and their beliefs as to the value of the economic damages: "Plaintiffs
have asserted claims for various types of damages as discussed in their
Complaint. Plaintiffs believe the jury will render a verdict in excess of
$75,000.00. Attorneys' fees, other statutory damages and costs cannot be
calculated at this time. As far as a computation, plaintiffs do not yet know the full
amount of their damages.  Some damages are economic, while other damages are
non-pecuniary in nature. The damages asserted in the Complaint are: Actual,
statutory, exemplary and punitive damages to be awarded in this case, as well as
other demands and claims asserted herein including, but not limited to, out-of-
pocket expenses, property damages, pain and suffering, embarrassment,
inconvenience, fear of financial security, benchmark portfolio, or well-managed
account, damages, lost trading costs, loss of bargain damages, lost monies caused
by churning, excessive commissions, bonuses, fees and other assessments, lost
economic and investment opportunity and value, lost expectancy of profit and
investment return, lost value of the investments, loss of incidental time,
frustration, emotional distress, mental anguish, attorneys' fees, and court costs,
and other assessments proper by law and any and all other applicable federal and

state laws, together with legal interest thereon from date of judicial demand until paid." See plaintiffs' initial disclosures. Further, plaintiffs provided written estimates of their damages, broken down as best plaintiffs could, in their document disclosures. See, ex., Bates Nos. 2036-2079. These documents contain both handwritten calculations and notes by plaintiffs, some on other papers, as well some typed tables and calculations by plaintiffs. Plaintiffs' calculations are easily identified as such. Bates Nos. 2036-2079 were part of plaintiffs' extensive document disclosures. This response will be supplemented by disclosures and reports of experts offered by plaintiffs.

Plaintiffs provided a comparable answer to Interrogatory No. 3, which sought information regarding the damages Plaintiffs allegedly incurred as a result of Haddox's conduct.  In addition, Plaintiffs asserted meritless objections, and did not produce any new documents, in response to Requests for Production No. 55 and 56, which sought documents regarding their alleged damages and claim for attorney's fees:

**REQUEST FOR PRODUCTION NO. 55:**

All documents concerning the damages claimed by Plaintiffs in the Lawsuit.

**RESPONSE:**

Plaintiffs object to this request as vague, ambiguous and overly broad, as well as premature, in part, and may include items that are not presently known, in part. Experts working notes were not subject to disclosure during discovery. McDonald v. Sun Oil Co., D.Or.2006, 423 F.Supp.2d 1114, motion granted 2006 WL 1720535, affirmed in part, reversed in part 548 F.3d 774, certiorari denied 129 S.Ct. 2825, 557 U.S. 919, 174 L.Ed.2d 552. Subject thereto, plaintiffs respond: Plaintiffs have made substantial and complete written and document disclosures and supplementation thereto, including current identities of experts. Further, defendants' disclosures and third party disclosures pursuant to subpoenas also support the claims for damages. Plaintiffs will continue to supplement this response, as need be, and as additional document are identified. See disclosures.

**REQUEST FOR PRODUCTION NO. 56:**

All fee agreements, fee bills, statements, invoices, and timesheets concerning the attorney's fees sought to be recovered by Plaintiffs in the Lawsuit.

**RESPONSE:**

Plaintiffs object to this request as seeking information which is not discoverable at this time and the request is premature. Further, plaintiffs'

invoices/statements/fee bills include information which is privileged. Subject thereto, plaintiffs respond: Aside from items addressed in the objection, there are no discoverable items at this time

This action has now been pending for almost ten months, and it is incumbent on Plaintiffs to state the amounts of damages they are seeking and how those amounts were calculated.[10] LFA should not be required to speculate as to the extent of the alleged losses of Plaintiffs, and the Court should thus overrule Plaintiffs' objections and order them to fully answer Interrogatories No. 2 and 3 with the requested information about their alleged damages and produce (to the extent they have not previously done so) all of the documents sought in Requests for Production No. 55 and 56.

**C.**      **LFA is entitled to complete information and documents regarding Plaintiffs' investments and alleged losses.**

In Interrogatory No. 4, LFA sought information regarding Plaintiffs' investments over time, including details regarding when they bought and sold the products at issue, the amounts they paid for and received from such products, and their awareness of these transactions, yet Plaintiffs' answer is woefully incomplete:

**INTERROGATORY NO. 4:**

> For each annuity or other financial product (including, but not limited to, the Annuities) that you purchased since January 1, 2005, identify the product (by type and number), the issuer, the date of purchase, the amount paid, the date you sold it, and the amount of proceeds you received over time from such product. In addition, please identify which annuities or other financial products you contend that you were unaware of at the time they were purchased.

---

[10] *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); *see also Continental Illinois Nat'l Bank & Trust Co. v. Caton*, (136 F.R.D. 682, 687 (D. Kan. 1991) (stating that in response to an interrogatory requesting the amount of damages sought, the defendant "is entitled to a specific and substantive answer, i.e. the dollar amount of plaintiff's claimed damages and a definitive description of other non-pecuniary relief, if any, plaintiff seeks"); *King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 6-7 (D.D.C. 1987) (ordering that a plaintiff provide information on damages and stating "[b]y filing this action and alleging damages, the plaintiffs have placed their theory behind each alleged loss squarely at issue").

**ANSWER:**

Plaintiffs object to this request as vague, ambiguous and, as stated, overly broad, and grossly exceeding discovery limitations imposed by the Federal Rules of Civil Procedure and Local Rule. Subject thereto, plaintiffs respond: See the detailed explanations contained in plaintiffs' operative complaint. Further, records showing which investments that plaintiffs maintained are clearly categorized and produced in the plaintiffs' document disclosure. As to the accountings for buy and sale dates, sums and proceeds, plaintiffs addressed their knowledge in the complaint and further in these responses. As to matters done by defendants without plaintiffs' knowledge or agreement, those transactions have been clearly explained. Plaintiffs explained that they did not take out a loan and further Haddox's pattern of misconduct is further exemplified in DKT #32-1, where other consumers were victimized in the same manners.

In light of the allegations in the Amended Complaint, LFA is entitled to an inventory of Plaintiffs' investments and the gains and losses from such investments, including the interim payments that they received over time.  In fact, Plaintiffs' preparation of an answer to this interrogatory will undoubtedly help them itemize their alleged losses (if any such losses occurred) as sought in Interrogatories No. 2 and 3.  Moreover, Plaintiffs cannot force LFA to divine those calculations from either the Amended Complaint, which is not a business record under Rule 33(d), or from the documents they have produced, as Plaintiffs can more readily derive this information than can LFA.[11]

And as part of that effort, Plaintiffs should be required to specifically identify which purchases and sales were allegedly made without their knowledge.  From LFA's review of the available documents, it appears that Plaintiffs had actual knowledge of most of the transactions at issue and constructive knowledge of many of the other transactions.  Notwithstanding Plaintiffs' assertion that the unknown transactions "have been clearly explained," LFA does not

---

[11] *See Mulero-Abreu v. Puerto Rico Police Dep't*, 675 F.3d 88, 93 (1st Cir. 2012) ("But answering interrogatories simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33."); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D 115, 120 (N.D. Ga. 1972) (stating that "incorporation by reference of the allegations of a pleading is not a responsive and sufficient answer to an interrogatory").

at this stage fully understand which specific transactions Plaintiffs contend they did not know about, which is why the Court should overrule their objections and order that they fully and completely answer Interrogatory No. 4.

**D.     LFA is entitled to complete information regarding the documents that Haddox allegedly altered or forged.**

Moreover, one of Plaintiffs' primary allegations is that Haddox purportedly altered or forged their signatures on certain documents.  LFA sought, through Interrogatories No. 6 and 9, to discover which documents out of the thousands of pages at issue he allegedly altered or forged their signatures on, yet Plaintiffs did not provide LFA with any specificity whatsoever regarding these allegations:

**INTERROGATORY NO. 6:**

Identify by Bates number each document that Haddox purportedly altered in any way.

**ANSWER:**

Plaintiffs object to this request as vague, ambiguous and, as stated, overly broad, and grossly exceeding discovery limitations imposed by the Federal Rules of Civil Procedure and Local Rule. Plaintiffs object to this interrogatory as calling for plaintiffs to engage in speculation and conjecture as to documents that Haddox altered and manipulated when plaintiffs still have not received a full set of documents containing all of the documents that Haddox altered. Subject thereto, plaintiffs respond: Plaintiffs have provided numerous examples and produced items which plaintiffs receiving including the "Haddox file papers" which have been clearly identified and marked.[12] See plaintiffs' opposition papers and exhibits to Haddox's pending motion which are responsive as well. See plaintiffs' complaint; plaintiffs' objections and responses to LFA's Requests for Admissions and these discovery responses as well.

\*\*\*

_____

[12] Plaintiffs repeatedly point to the documents in the "Haddox-Produced File Material" folder (P. 1-78) as evidence of Haddox's misconduct, yet many of those documents appear to be legitimate.  For example, one of the few documents that Plaintiffs unambiguously admit is authentic is the check dated July 23, 2012, from Allianz Life, which is part of this file.  *See* response to Request for Admission No. 69, which admits the authenticity of P. 68-69.

**INTERROGATORY NO. 9:**

Identify by Bates number each document, including, but not limited to, Exhibits 1-96 hereto, that you contend bears a forged or altered signature.

**ANSWER:**

Plaintiffs object to this request as vague, ambiguous and, as stated, overly broad, and grossly exceeding discovery limitations imposed by the Federal Rules of Civil Procedure and Local Rule. Plaintiffs object to this interrogatory as calling for plaintiffs to engage in speculation and conjecture as to documents that Haddox altered and manipulated when plaintiffs still have not received a full set of documents containing all of the documents that Haddox altered. Subject thereto, plaintiffs respond: Plaintiffs have provided numerous examples and produced items which plaintiffs receiving including the "Haddox file papers" which have been clearly identified and marked. See plaintiffs' complaint; plaintiffs' objections and responses to LFA's Requests for Admissions and these discovery responses as well.

As noted above, Plaintiffs cannot answer these interrogatories by forcing LFA to review their pleadings, and merely because they purportedly cannot now identify all of the allegedly altered or forged documents does not excuse them from having to list the documents of which they are now aware and then supplementing thereafter.[13]  In fact, Plaintiffs have, in the various filings they have submitted in response to Haddox's Rule 11 motion, specifically identified some of the documents they contend he mishandled,[14] which establishes that, when they believe it supports their position, they are able to identify some documents that they contend evidence Haddox's alleged wrongdoing.  The Court should thus overrule Plaintiffs' objections to Interrogatories No. 6 and 9 and require them to provide substantive answers listing the Bates numbers of all of the allegedly altered or forged documents.[15]

---

[13] *See* Fed. R. Civ. P. 26(e)(1) (requiring the supplementation of discovery responses).

[14] *See, e.g.*, Document 28 (Opposition to Defendant Gregory Lamar Haddox's Motion for Sanctions under F.R.C.P. 11); Document 35 (Surreply in Opposition to Defendant Gregory Lamar Haddox's Motion for Sanctions under F.R.C.P. 11).

[15] Plaintiffs should also be ordered to produce the identified documents, to the extent they have not previously done so, in response to Requests for Production No. 33 and 35, which seek copies of the documents identified in their answers to Interrogatories No. 6 and 9.

**E.      LFA is entitled to complete information regarding
the documents that Haddox allegedly misdirected.**

Plaintiffs also contend that Haddox misdirected documents that were intended for them,

which is why LFA sought through Interrogatory No. 8 to identify the documents Plaintiffs

allegedly did not receive in a timely fashion.  Here again, Plaintiffs failed to provide LFA with a

substantive response:

**INTERROGATORY NO. 8:**

Identify by Bates number each document, including, but not limited to,
Exhibits 1-96 hereto, that you contend you did not receive within two weeks of its
date.

**ANSWER:**

Plaintiffs object to this request as vague, ambiguous and, as stated, overly
broad, and grossly exceeding discovery limitations imposed by the Federal Rules
of Civil Procedure and Local Rule. Plaintiffs object to this interrogatory as calling
for plaintiffs to engage in speculation and conjecture as to documents that Haddox
altered and manipulated when plaintiffs still have not received a full set of
documents containing all of the documents that Haddox altered. Subject thereto,
plaintiffs respond: Plaintiffs have provided numerous examples and produced
items which plaintiffs receiving including the "Haddox file papers" which have
been clearly identified and marked. See plaintiffs' complaint; plaintiffs'
objections and responses to LFA's Requests for Admissions and these discovery
responses as well.

Although Plaintiffs contend that Haddox (whether intentionally or inadvertently) gave

Jackson National Life his home address as their address, LFA's review of the documents

produced by Plaintiffs, on the one hand, and Allianz Life and National Western Life, on the other

hand, does not indicate that any documents to or from those annuity issuers were misdirected.  In

any event, Plaintiffs' answer is non-responsive, and the Court should overrule their objections

and require them to identify by Bates number all of the documents in their production they

contend they did not receive in a timely manner.[16]

**F.     Many of Plaintiffs' requests for production responses are deficient.**

In addition, Plaintiffs' requests for production responses are replete with improper and unnecessary objections or other statements.

1.      <u>Annuity contracts</u>.   For example, even though they signed several delivery receipts acknowledging their receipt of many of the annuities at issue, Plaintiffs assert in response to Requests for Production No. 1, 5, 9, 13, 17, and 21 that they did not receive a single annuity contract from anyone.   This position strains credulity, but if Plaintiffs continue to espouse it, then they should simply respond to these requests for production by stating, without any objections, that they have no responsive documents.

2.      <u>Account documents</u>.   LFA is also entitled to substantive responses, without any objections, to Requests for Production No. 25-28, 37, and 45, which seek documents regarding the accounts that Plaintiffs have had over time with LFA and their communications with LFA. As noted above, LFA's relationships with Plaintiffs ended by no later than mid-2008, and its relationship with Haddox terminated in mid-2009.   LFA sought discovery into the specific communications that Plaintiffs had over time with LFA, yet Plaintiffs responded with meritless objections and did not provide any useful information.   For example, in their response to Request for Production No. 37, Plaintiffs stated:

**REQUEST FOR PRODUCTION NO. 37:**

All correspondence and other documents Plaintiffs provided to or received from LFA concerning Plaintiffs' Annuities.

---

[16] Plaintiffs should also be ordered to produce the identified documents, to the extent they have not previously done so, in response to Request for Production No. 34, which seeks copies of the documents identified in their answer to Interrogatory No. 8.

**RESPONSE:**

> Plaintiffs object to this request as vague, ambiguous and, as stated, overly broad. Subject thereto, plaintiffs respond: Plaintiffs provided their substantial and complete written and document disclosures and supplementation thereto. Further, documents disclosed by defendants and third parties were provided and may also contain some responsive documents. As plaintiffs have alleged, not all communications purportedly sent to plaintiffs by LFA/Haddox were actually sent to plaintiffs, and not all documents purportedly signed by plaintiffs were ever shown to plaintiffs or signed by plaintiffs, and further Haddox altered some items after plaintiff[s] signed the document[s], and Haddox diverted and manipulated other documents. See plaintiffs' complaints, disclosures and discovery responses, which fully explain these matters. Plaintiffs show that Haddox acted as an agent of LFA in his dealings with plaintiffs and third persons.

The notion that every document that Plaintiffs ever sent to or received from anyone regarding the Annuities is somehow imputable to LFA is simply wrong, and the Court should overrule Plaintiffs' objections to these requests and order them to specifically identify the documents that involve transactions in Glynn's LFA Account or that they exchanged over time with LFA and then state that they do not have any other responsive documents.

     3.    <u>Agreements with LFA</u>.  One of Plaintiffs' claims against LFA is for breach of contract, and LFA thus sought, in Request for Production No. 39, to obtain copies of the agreements that Plaintiffs contend they have with LFA.  Plaintiffs and Szwak were affirmatively required, *prior* to filing the Amended Complaint, to have evidentiary support for their claims against LFA,[17] but instead of identifying and producing the agreements upon which they base this cause of action, Plaintiffs assert baseless objections and allege that the Basic Account Agreement produced by LFA "contain[s] suspicious markings" and that any agreements that existed "were either mislaid, destroyed or otherwise altered by someone other than plaintiffs":

---

[17] *See Rodriguez-O'Ferral v. Trebel Motors Corp.*, 154 F.R.D. 33, 35 (D.P.R. 1994) (awarding Rule 11 sanctions where "the attorneys utterly failed in their responsibility to investigate and evaluate the facts prior to filing the complaint"), *aff'd*, 45 F.3d 561 (1st Cir. 1995).

**REQUEST FOR PRODUCTION NO. 39:**

      All contracts or agreements between Plaintiffs and LFA.

**RESPONSE:**

      Plaintiffs object to this request as vague and ambiguous. Subject thereto, plaintiffs respond: Plaintiff Mr. Sistrunk, through counsel, received an alleged LFA Basic Account Application document from LFA's attorney Andrew Whitaker on or about May 30, 2018. The document contained suspicious markings and undersigned requested the ability to see the original or, at a minimum, a higher quality copy and Whitaker responded that there was no better copy. Plaintiffs cannot vouch for and indeed question the copy provided by Whitaker. See emails between undersigned and Whitaker regarding this issue. Plaintiffs believe that whatever original account applications/contracts existed, those documents were either mislaid, destroyed or otherwise altered by someone other than plaintiffs and therefore the contracts are not produced in proper form. Other "agreements between plaintiffs and LFA" may be contained in the vast disclosures in this case but it is unclear what defendant is asking about. Plaintiffs show that Haddox acted as an agent of LFA in his dealings with plaintiffs and third persons.

LFA emphatically denies that it has manipulated or altered, in any way, shape, or form, the sole agreement it ever had with either of Plaintiffs, and they should either withdraw these scurrilous references or produce whatever evidence they have in support of them.  Plaintiffs should also be ordered to produce the agreements upon which their breach of contract claim is based or, in the absence of such production, dismiss such claim with prejudice

      4.    <u>Account statements and tax returns</u>.  In Requests for Production No. 41-43, LFA sought copies of Plaintiffs' brokerage account statements, bank account statements, and tax returns.  While Plaintiffs have produced some brokerage and bank account statements and excerpts from their tax returns from 2015, 2016, and 2017, they have offered to sign authorizations that will enable LFA to obtain copies of any unproduced documents.  For example, in response to Request for Production No. 43, Plaintiffs stated:

**REQUEST FOR PRODUCTION NO. 43:**

      The federal income tax returns (with all schedules, forms, and

attachments) and all amendments thereto for the years 2005 through 2018 for Plaintiffs.

**RESPONSE:**

> Plaintiffs object to this request as vague, ambiguous and, as stated, overly broad and call for an excessive period of time for returns. Plaintiffs did not keep personal copies of returns for that many years. Plaintiffs will agree to sign a reasonable, proper authorization for release of such records, upon receiving such an authorization. Subject thereto, plaintiffs respond:  See plaintiffs' supplemental disclosures from November, 2018, which contains the tax return copies possessed by plaintiffs.

Rule 34(a) states that a party may request documents within the "possession, custody, or control" of the party upon whom the request is served, and Plaintiffs are under an affirmative obligation to obtain and produce such documents.[18]   As such, Plaintiffs must disclose not only the documents in their possession, but also the documents in the possession of Szwak and others (such as their accountants) who have documents belonging to them.[19]   LFA should not have to incur the time and expense associated with serving subpoenas to obtain documents that are in Plaintiffs' possession, custody, or control.  So, to the extent they have not previously done so, Plaintiffs must take the steps necessary to retrieve and produce the documents sought in these requests for production.

    5.    Online access to accounts.   In Request for Production No. 44, LFA sought documents regarding Plaintiffs' efforts to access account information online, and they flatly denied ever doing so:

---

[18] *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000) (noting that "documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a non-party to the action"); *Green v. Fulton*, 157 F.R.D. 136, 142 (D. Me. 1994) ("Legal ownership or actual physical possession is not required; documents are considered to be under a party's 'control' when that party has the right, authority or ability to obtain those documents upon demand.").

[19] *See Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002) (ordering the production of appraisal materials where the defendants had "a legal right to the documents and the ability to obtain the documents from their tax attorneys"); *Henderson v. Zurn Indus., Inc.*, 131 F.R.D. 560, 567 (S.D. Ind. 1990) (observing that a party "can be required to produce a document that he has turned over to his attorney").

**REQUEST FOR PRODUCTION NO. 44:**

All documents concerning Plaintiffs' efforts to access online the status of Plaintiffs' Annuities or any other financial investment.

**RESPONSE:**

Plaintiffs object to this request as vague, ambiguous and, as stated, overly broad. Subject thereto, plaintiffs respond: Plaintiffs did not use the websites of annuity providers. Plaintiffs were not instructed by LFA/Haddox or the annuity entities as to use, nor were plaintiffs otherwise skilled in using the websites and Haddox presumably was, as he used the websites to monitor and tamper with plaintiffs' investments. Plaintiffs responded to LFA's Request No. 69, referencing Bates No. 5 [disclosed by plaintiffs, as obtained from Haddox's file papers], as follows: ***REQUESTS FOR ADMISSION NO. 95:  Admit that Exhibit 69 hereto is a true, correct, and authentic copy of the Allianz Life Policy Detail dated January 30, 2015, regarding Contract no. 70298074.

Plaintiffs object to the instructions provided by defendant as creating vagueness, ambiguities and confusion. Further, the request is framed as seeking to have plaintiffs state what a third party may have said or what defendant said was "true" and "correct" which plaintiffs are not capable of stating. The Exhibit is Bates-labeled as having come from papers in Haddox's file papers.  Plaintiffs cannot identify the handwriting on the document but it is not plaintiffs' writing. Some documents, appended to this set of requests, were received by plaintiff s], while many were not and many contain markings and writings by Haddox [or other unknown persons] after-the-fact.  Subject to those objections, plaintiffs respond: DENIED.***

Plaintiffs' response is demonstrably false, as Exhibits 82-84 to the Discovery Requests are letters

addressed to, and produced by, Plaintiffs regarding National Western Life's invitations to

Plaintiffs to access account information online.  Amazingly, even though Plaintiffs produced

Exhibits 82-84 to LFA with their initial disclosures, when LFA asked them, in Requests for

Admissions No. 108-110, to admit the authenticity of these exhibits, Plaintiffs asserted:

Plaintiffs object to the instructions provided by defendant as creating vagueness, ambiguities and confusion. Further, the request is framed as seeking to have plaintiffs state what a third party. said was "true" and "correct" which plaintiffs are not capable of stating. Part of the Exhibit pages appear to bear plaintiffs' initials penned but the papers are incomplete. Some documents, appended to this set of requests, were received by plaintiff[s], while many were not and many contain markings and writings by Haddox [or other unknown persons] after-the-fact. Subject to those objections, plaintiffs respond: DENIED.

Moreover, Jackson National Life's recent production of documents in response to Plaintiffs' subpoena includes documents relating to Lawana's registration for online access to her account information.[20]  Plaintiffs' objections should be overruled, and they should be required to retrieve and produce the requested documents.

6. <u>Complaints to LFA</u>.  In Request for Production No. 57, LFA sought copies of any complaints that Plaintiffs had submitted to LFA regarding either the Annuities or any aspect of Haddox's conduct, and Plaintiffs' response was, once again, non-responsive:

**<u>REQUEST FOR PRODUCTION NO. 57:</u>**

> All documents concerning any complaints that any one or more of Plaintiffs submitted to LFA concerning Plaintiffs' Annuities or any aspect of Haddox's conduct.

**<u>RESPONSE:</u>**

> Plaintiffs object to this request as vague, ambiguous and, as stated, overly broad. Subject thereto, plaintiffs respond: All communications by and between plaintiffs and LFA/Haddox are contained in the Bates Nos. 1-78, 3405-3776, and many of the other Bates labeled production by plaintiffs, of plaintiffs' document disclosures previously disclosed. The entire series of cited documents are addressed in the complaint and discovery responses. Further, communications are evidenced in the disclosures by defendants and third parties.

Plaintiffs did not make, prior to their filing of this action, any complaints to LFA regarding either the Annuities or any aspect of Haddox's conduct, and the documents referenced in this response are not responsive to this request for production.  Plaintiffs' objections should be overruled, and they should be ordered to respond to this request for production by stating that they do not have any responsive documents.

---

[20] True and correct copies of the emails produced by Jackson National Life are attached hereto as Exhibit G. And, Plaintiffs' document production indicates that one or both of them accessed information online regarding one of the variable annuities that Glynn purchased through one of LFA's affiliates. *See* Exhibit H.

### G.   Many of Plaintiffs' requests for admissions responses are deficient.

Finally, Plaintiffs' responses to LFA's requests for admissions are riddled with deficiencies.  As part of its discovery efforts, LFA incurred the time and expense of obtaining documents from Allianz Life, Jackson National Life, and National Western Life.  LFA reviewed those third-party documents, matched them up with Plaintiffs' prior production, and asked Plaintiffs to authenticate, pursuant to Rule 36(a)(1)(B),[21] copies of 96 documents.  The bulk (if not all) of these documents were produced by *both* Plaintiffs *and* the applicable third-party annuity issuer, and LFA expected that Plaintiffs would unambiguously admit the authenticity of these documents or explain, pursuant to Rule 36(a)(4), why they were unable to do so.[22]

Amazingly, however, Plaintiffs unambiguously admitted the authenticity of only FIVE documents,[23] and instead of providing substantive responses to LFA's other requests for admissions, Plaintiffs asserted numerous objections and gratuitous statements that had nothing to do with the document at issue.  For example, in response to Requests for Admissions No. 15 and 66, though which LFA sought to authenticate documents that Plaintiffs had produced, Plaintiffs admitted receiving the documents but denied these requests on spurious grounds:

### REQUEST FOR ADMISSION NO. 15:

Admit that Exhibit 11 hereto is a true, correct, and authentic copy of the Allianz Life Policy Delivery Receipt dated June 24, 2005, regarding Glynn's receipt of Contract no. 70289074.

---

[21] Fed. R. Civ. P. 36(a)(1)(B) (providing that a party may request any other party to admit "the genuineness of any described documents").

[22] Fed. R. Civ. P. 36(a)(4) (providing that, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it" and that "[a] denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest").

[23] Plaintiffs admitted without objection the authenticity of the documents at issue in Requests for Admissions No. 10, 12, 27, 62, and 69.

**DEFENDANT LINCOLN FINANCIAL ADVISORS CORPORATION'S**
**MOTION TO COMPEL AND SUPPORTING BRIEF - Page 18**

**RESPONSE:**

Plaintiffs object to the instructions provided by defendant as creating vagueness, ambiguities and confusion. Further, the request is framed as seeking to have plaintiffs state what a third party may have said was "true" and "correct" which plaintiffs are not capable of stating. Plaintiffs did receive Exhibit 11, a "Receipt," but have not receive a copy of any annuity policies. Subject to those objections, plaintiffs respond: DENIED.

***

**REQUEST FOR ADMISSION NO. 66:**

Admit that Exhibit 46 hereto is a true, correct, and authentic copy of the Allianz Life 2012 Annual Contract Statement regarding Contract no. 70289074 for the contract year ending May 4, 2012.

**RESPONSE:**

Plaintiffs object to the instructions provided by defendant as creating vagueness, ambiguities and confusion. Further, the request is framed as seeking to have plaintiffs state what a third party may have said was "true" and "correct" which plaintiffs are not capable of stating. Plaintiffs did receive Exhibit 46, however it is not true or correct particularly regarding the "loan" reference and plaintiffs contacted Haddox and Haddox claimed that the "loan" reference was just internal methodology and when the annuity was cashed out, it would not show in that manner. When Haddox had the annuities placed with JNLIC, Allianz claimed a "loan" was "paid off" Subject to those objections, plaintiffs respond: DENIED.

Since Plaintiffs received and produced these documents, the Court should overrule these frivolous objections and require Plaintiffs to admit these requests for admissions.

In some of their other responses, Plaintiffs improperly deny requests for admissions that are indisputably true.  For example, Glynn had a brokerage account with LFA from July 2001 through May 2008, and LFA sent him monthly statements regarding the activity in his account. Those statements went directly from LFA to Glynn, meaning that there was no way for Haddox to intercept them.  With their disclosures, Plaintiffs produced over 500 pages of documents from that LFA account.  In Request for Admission No. 18, LFA asked Plaintiffs to authenticate a page from an account statement that demonstrated, contrary to Plaintiffs' allegation in the Amended

Complaint that Defendants had, without Plaintiffs' knowledge, transferred $40,000.00 from their

USAA holdings to Allianz Life, that Glynn had withdrawn that amount from his LFA account:

**REQUEST FOR ADMISSION NO. 18:**

Admit that Exhibit 13 hereto is a true, correct, and authentic copy of page 7 of 10 from the Statement regarding Glynn's LFA Account for the period from October 1, 2005, through October 31, 2005.

**RESPONSE:**

Plaintiffs object to the instructions provided by defendant as creating vagueness, ambiguities and confusion. Further, the request is framed as seeking to have plaintiffs state what defendant may have said was "true" and "correct" which plaintiffs are not capable of stating. Further, object as argumentative. The funds at issue came from USAA holdings that were liquidated and may have included some LNL policy surrender funds. Some of those funds were temporarily placed in other investment devices [mutual funds, etc., as shown in the disclosure documents] then liquidated from those devices as well. Some of the funds came through liquidated USAA holdings and placed into an LFA deposit account before transferring on to Allianz. The LFA deposit account was but one service and product provided to plaintiffs by LFA/Haddox. Plaintiffs did not receive Exhibit 13. Subject to those objections, plaintiffs respond: DENIED.

**REQUEST FOR ADMISSION NO. 19:**

Admit that paragraph 18 of the Amended Complaint falsely alleges that, unbeknownst to Plaintiffs at the time, on or about October 11, 2005, Defendants transferred approximately $40,000.00 from Plaintiffs' USAA holdings to Allianz Life.

**RESPONSE:**

Plaintiffs object to the instructions provided by defendant as creating vagueness, ambiguities and confusion. Further, the request is framed as seeking to have plaintiffs state what defendant may have said was "true" and "correct" which plaintiffs are not capable of stating. Further, object as argumentative. The funds at issue came from USAA holdings that were liquidated and may have included some LNL policy surrender funds. Some of those funds were temporarily placed in other investment devices [mutual funds, etc., as shown in the disclosure documents] then liquidated from those devices as well. Some of the funds came through liquidated USAA holdings and placed into an LFA deposit account before transferring on to Allianz. The LFA deposit account was but one service and product provided to plaintiffs by LFA/Haddox. See pars. 16-18, plaintiffs' operative complaint. Subject to those objections, plaintiffs respond: DENIED.

Plaintiffs' assertion that Glynn "did not receive Exhibit 13" is, as demonstrated by their production of that document to LFA, false, and their receipt of that page also confirms their denial of Request for Admission No. 19 is not well taken.

In turn, Plaintiffs are well aware that one of LFA's primary defenses is that some or all of their claims are prescribed.  Plaintiffs produced with their disclosures seven letters dated April 10, 2013, from Allianz Life, each of which stated that Haddox "is no longer contracted with Allianz Life" and "is no longer authorized to provide ongoing service related to your Allianz Life contract."  These letters obviously put Plaintiffs on notice of potential irregularities in Haddox's conduct, and as it turns out, they have relied upon Allianz Life's investigation into, and termination of, Haddox in their efforts to rebut his Rule 11 motion.[24]  In Requests for Admissions No. 80-86, LFA asked Plaintiffs to authenticate these letters, which it marked as Exhibits 57-63, but fearful of their prescriptive impact, Plaintiffs denied each of these requests and specifically denied ever receiving any of these letters:

> Plaintiffs object to the instructions provided by defendant as creating vagueness, ambiguities and confusion.  Further, the request is framed as seeking to have plaintiffs state what a third party may have said was "true" and "correct" which plaintiffs are not capable of stating. Plaintiffs did not receive Exhibits 57-63. Subject to these objections, plaintiffs respond: DENIED.

These denials are flatly contradicted by Plaintiffs' allegations in the Amended Complaint, in which they have asserted:

> On April 10, 2013, ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA wrote plaintiffs with a vague notification that HADDOX was no longer affiliated with ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA but ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA never mentioned that HADDOX's license was cancelled.
>
> Immediately upon receipt of the letter from ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, plaintiffs contacted

---

[24] *See* Document 35 (Surreply in Opposition to Defendant Gregory Lamar Haddox's Motion for Sanctions under F.R.C.P. 11) at 2-3.

defendants but defendants downplayed HADDOX's situation as a simple change of relationship as to ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA but defendants never mentioned that HADDOX's license was cancelled.[25]

Plaintiffs' denials of Requests for Admissions No. 80-86, as well as of the follow-on Requests for Admissions No. 87-89, are in bad faith, and the Court should overrule Plaintiffs' objections and require them to unambiguously admit these requests for admissions.

At the end of the day, if a given document was sent to or received by Plaintiffs and then PRODUCED BY THEM, they can speak to its authenticity.  This is true regardless of whether Plaintiffs agree with the contents of the document.  Even though they grudgingly admitted, subject to their meritless objections, the authenticity of 17 additional documents,[26] Plaintiffs have denied, typically subject to meritless objections, the authenticity of the remaining 74 documents, 68 of which THEY PRODUCED TO DEFENDANTS DURING DISCOVERY IN THIS ACTION.  Even more amazingly, Plaintiffs assert in some of these responses (as well as their answer to Interrogatory No. 5) that they did not receive the documents at issue, which is flatly rebutted by, among other evidence, their production of such documents to Defendants in this action.

All told, the Court should overrule Plaintiffs' objections and require them to unambiguously admit or deny the authenticity of the documents at issue in Requests for Admissions No. 7-9, 14-15, 18, 20, 24-26, 37-44, 46-49, 51, 53, 55-56, 65-66, 72-73, 76-86, 90-94, 100-102, and 104-122, all of which they produced to Defendants during this action.

**H.**   **LFA is entitled to recover its expenses, including attorneys' fees, from Plaintiffs.**

Rule 37(a)(5) provides that, if a motion to compel is granted, the Court "must, after

---

[25] Document 9 (Amended Complaint), ¶¶ 63-64 (all caps in original).
[26] Plaintiffs admitted, subject to their objections, the authenticity of the documents at issue in Requests for Admissions No. 4, 6, 17, 21, 23, 29, 57-61, 67, 96-99, and 103.

**DEFENDANT LINCOLN FINANCIAL ADVISORS CORPORATION'S**
**MOTION TO COMPEL AND SUPPORTING BRIEF - Page 22**

giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees...."[27]  In light of the demonstrable lack of merit in Plaintiffs' discovery responses and LFA's efforts to resolve these disputes without judicial intervention, LFA is entitled to recover its reasonable expenses, including attorney's fees, from Plaintiffs and/or their counsel.

## IV.   <u>CONCLUSION</u>

LFA respectfully requests that the Court enter an order (1) overruling Plaintiffs' objections to Interrogatories No. 2-4, 6, and 8-9, (2) requiring Plaintiffs, within ten (10) days of the entry of such order, to fully answer, under oath, Interrogatories No. 2-4, 6, and 8-9, (3) overruling Plaintiffs' objections to Requests for Production No. 1, 5, 9, 13, 17, 21, 23-28, 33-35, 37, 39, 41-45, and 55-57, (4) requiring Plaintiffs, within ten (10) days of the entry of such order, to produce all of the documents in their possession, custody, or control (including, but not limited, to, the documents they can obtain upon request from their attorney or accountants) sought in Requests for Production No. 1, 5, 9, 13, 17, 21, 23-28, 33-35, 37, 39, 41-45, and 55-57, (5) overruling Plaintiffs' objections to Requests for Admissions No. 7-9, 14-15, 18, 20, 24-26, 37-44, 46-49, 51, 53, 55-56, 65-66, 72-73, 76-86, 90-94, 100-102, and 104-122, (6) requiring Plaintiffs, within ten (10) days of the entry of such order, to unambiguously admit or deny Requests for Admissions No. 7-9, 14-15, 18, 20, 24-26, 37-44, 46-49, 51, 53, 55-56, 65-66, 72-73, 76-86, 90-94, 100-102, and 104-122, and (7) awarding LFA the reasonable expenses, including attorney's fees, that it has incurred in connection with this motion.  LFA further requests all relief to which it is justly entitled.

---

[27] Fed. R. Civ. P. 37(a)(5).

Respectfully submitted,

By: /s/ Andrew C. Whitaker
   Andrew C. Whitaker (pro hac vice)
   Texas Bar No. 21273600
   andrew.whitaker@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

/s/ Robert A. Dunkelman
Robert A. Dunkelman
Louisiana Bar No. 18189
rdunkelman@padwbc.com

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY BYRD & CROMWELL, L.L.P.
400 Texas Street, Suite 400 (71101)
P.O. Box 1786
Shreveport, Louisiana 71166-1786
(318) 221-1800
(318) 226-0390 (telecopy)

ATTORNEYS FOR DEFENDANT
LINCOLN FINANCIAL ADVISORS
CORPORATION

## <u>CERTIFICATE OF CONFERENCE</u>

By letter dated November 30, 2018 (Exhibit E) and emails dated December 14 and 15, 2018 (Exhibit F), counsel for LFA conferred with David A. Szwak, counsel for Plaintiffs, regarding the relief requested in this motion.  Plaintiffs did not provide any additional information or documents in response to either this letter or these emails.  In a telephone call on February 12, 2019, LFA's counsel further conferred with Mr. Szwak, who has not to date addressed on Plaintiffs' behalf any of LFA's complaints.  Since agreement could not be reached, this motion is presented to the Court for determination, and LFA will of course advise the Court in its reply brief of any subsequent corrective action taken by Plaintiffs.

/s/ Andrew C. Whitaker
Andrew C. Whitaker

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that, on February 14, 2019, I electronically transmitted the attached document to the Clerk of Court, using the ECF System for filing and transmittal of a Notice of Electronic Filing, to the following ECF registrants:  Mr. David A. Szwak, Bodenheimer, Jones, & Szwak, LLC, 416 Travis Street, Suite 1404, Mid South Tower, Shreveport, Louisiana 71101, and Mr. Bernard S. Johnson, Cook, Yancey, King & Galloway, PLC, 333 Texas Street, Suite 1700, Shreveport, Louisiana 71120-2260.

       /s/ Andrew C. Whitaker
       Andrew C. Whitaker