UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GLYNN DALE SISTRUNK, ET AL | CIVIL ACTION NO. 18-cv-0516 |
| VERSUS | JUDGE FOOTE |
| GREGORY LAMAR HADDOX, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Glynn and Lawana Sistrunk ("Plaintiffs") filed this civil action against an investment advisor and a related firm for the alleged churning of their account and fraudulent activity. Gregory Lamar Haddox, the advisor, responded to the complaint with a Rule 11 Motion for Sanctions (Doc. 22) on the grounds that the facts alleged lack evidentiary support. For the reasons that follow, it is recommended that the motion be denied.

### Summary of the Allegations

Plaintiffs allege in their Amended and Restated Complaint (Doc. 9) that they are unsophisticated investors who maintained investments with USAA prior to 2005. With Mr. Sistrunk's retirement approaching, Defendants allegedly persuaded them to liquidate most of the USAA investments and allow for the creation of an annuity account with Allianz Life Insurance Company of North America. Plaintiffs allege that their objectives were conservative annuities that would not risk losing the funds invested.

Plaintiffs allege that Defendants moved money into multiple Allianz accounts, without disclosing pertinent conditions or fees, as part of a systematic churning of Plaintiffs' money at great expense to them. Plaintiffs allege that Mr. Haddox improperly misdirected various statements from Allianz or others investment companies to his home address to cover up how the funds from the USAA account had been substantially bled down.

Plaintiffs also allege that Defendants obtained "fraudulent" loans that were assessed to their annuities without Plaintiffs' knowledge and without them receiving any benefit. Plaintiffs allege that a number of forged endorsements were involved in these transactions. They allege that Mr. Haddox's license to sell variable contracts in Louisiana was cancelled by the Department of Insurance in March 2012, but neither defendant ever told Plaintiffs of that action. These allegations, often in a transaction-by-transaction explanation, are set forth in the 166-paragraph Amended and Restated Complaint (Doc. 9).

**The Motion for Sanctions**

Rule 11 requires that every pleading be signed by at least one attorney of record. By presenting to the court a signed pleading, an attorney certifies that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. Pro. 11(b)(3).

Counsel for Mr. Haddox served a draft of a motion for sanctions on attorney David Szwak, counsel for Plaintiffs, that invoked Rule 11(b)(3). The motion noted that none of

the allegations in the complaint were identified as ones that will likely have evidentiary support after further investigation and discovery, so counsel for Mr. Haddox demanded that Mr. Szwak produce evidentiary support for most of his key allegations. Haddox contended that there were several allegations made in the amended complaint that had no evidentiary support and were contrary to facts disclosed in documents signed and approved by Plaintiffs.

Mr. Haddox challenged Plaintiffs' allegations that (1) Plaintiffs had no knowledge of or did not approve several transactions set forth in approximately 30 different paragraphs and (2) Haddox caused financial statements to be misdirected to his home address, as Plaintiffs alleged in approximately 30 paragraphs. Haddox specifically challenged Plaintiffs' ability to provide evidentiary support for the contentions that their signatures were forged, that loans made to them by the annuity issuers were fraudulent, or that Haddox falsified statements.

Haddox's draft motion was accompanied by a letter from defense counsel in which he stated that he had seen documents signed by Plaintiffs that requested "exactly the transactions which they are complaining about and which they claim they knew nothing about." Counsel invited Mr. Szwak to provide any evidence that he may have that supported his claims. Szwak did not respond within Rule 11(c)(2)'s 21-day safe harbor period, so Haddox filed his motion.

The motion begins by attacking Szwak's certification of the facts alleged. It ends with a request for unspecified sanctions and attorney fees against Szwak and Plaintiffs. In his reply (Doc. 31), Haddox states that he lacks insurance to fund his defense and clarifies

that he "filed the Rule 11 motion in an effort to narrow considerably the volume of allegations which he must defend." He asks that the challenged paragraphs be stricken from the complaint and that he be awarded fees and expenses incurred in filing his motion.

**Opposition to the Motion**

Plaintiffs and Szwak enrolled counsel to defend them from the sanctions motion. That attorney filed a memorandum in opposition to the motion, together with a declaration from Mr. Sistrunk and several documents. Mr. Sistrunk declared, under penalty of perjury, that he executed an affidavit in which he stated that he had read the original complaint prepared by attorney Szwak and that the allegations contained in it were true and correct to the best of his knowledge, information, and belief. See 28 U.S.C. § 1746. That verification/affidavit specifically addressed the allegations in the original complaint. It is dated June 3, 2018, which is after the filing of the restated complaint and before Haddox served his draft motion for sanctions. It does not appear the verification/affidavit was filed in the record until the Plaintiffs responded to the sanctions motion.

Mr. Sistrunk's declaration points to various attached documents that he contends show that Mr. Haddox's home address was substituted for Plaintiffs' on various account statements. Mr. Sistrunk said that he discovered these changes when he later received copies directly from the company that showed an original statement had been sent to Mr. Haddox at his home address. Mr. Sistrunk represents that certain dollar amounts on the statements were altered.

Mr. Sistrunk states in his declaration that Mr. Haddox would often meet the Sistrunks in a parking lot at the state fairgrounds, and he would have them sign documents

that had not been filled in or completed. Haddox would sometimes have Sistrunk endorse checks and then add the rest of the endorsement later. Sistrunk stated that he had no knowledge of the creation of a certain Allianz account but believes Haddox funded it by transferring money from his USAA accounts. He also points to loans evidenced by the paperwork and says he does not recall taking out such a loan and cannot recall any reason he would have done so.

Plaintiffs attached to another brief (Doc. 35) correspondence from the Louisiana Department of Insurance regarding Mr. Haddox's license. A notice of suspension and civil penalty in March 2015 stated that the department had received a letter from Allianz in which the company stated that it had terminated Mr. Haddox for cause based on him committing or attempting to commit fraud against the company. Part of the fraud was that Haddox contacted Allianz and requested, in a recorded telephone conversation, that the contact information for an annuity client be changed so that the client's mailing address would be the same as Haddox's home address and that the client's telephone number would be changed to Haddox's wife's cell phone number. Haddox later denied making this request. The investigation also indicated that Haddox counterfeited a letter in an attempt to cover up a mistake he made regarding the handling of an account.

Later in 2015, the Department issued a Notice of Revocation that revoked Haddox's Louisiana insurance producer's license. The revocation was based on a determination that Haddox's office provided two counterfeit letters to a client regarding the handling of his annuities. The content of the letters was misleading and, had the client chosen to follow

the information provided by Haddox in the counterfeited letters, he would have sustained a loss of over $100,000.

**Analysis**

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). An attorney has a duty to conduct a "reasonable inquiry into the facts and law of a case at the time [at] which [he] affixes [his] signature on any papers to the court." Mercury Air Grp., Inc. v. Mansour, 237 F.3d 542, 548 (5th Cir. 2001). A signing attorney has a duty of reasonable inquiry, but his signature is not a "guarantee of all alleged facts, especially if the matter is not easily discovered by extrinsic evidence." Health Net, Inc. v. Wooley, 534 F.3d 487, 497 (5th Cir. 2008).

Sanctions cannot be imposed "merely for the eventual failure of a claim; rather, sanctions are to be applied only where, at the time of the filing, the position advocated is unwarranted." Matta v. May, 118 F.3d 410, 415 (5th Cir. 1997). The Advisory Committee Notes explain that Rule 11 motions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Such motions "should not be used to test the legal or factual sufficiency of a party's claims." SortiumUSA, LLC v. Hunger, 2014 WL 1080765 (N.D. Tex. 2014).

It is recommended that the court exercise its discretion in this case to deny the motion for sanctions. Plaintiffs have set forth their allegations in great detail. Mr. Haddox, early in the case and before discovery has even commenced, essentially challenged

Plaintiffs to produce the evidence necessary to support their claims. He has not pointed to any particular documents or evidence that tend to disprove the claims, although he claims he has seen such documents. "A Rule 11 motion for sanctions is not a proper substitute for a motion for summary judgment." Mark's Airboats, Inc. v. Thibodaux, 2015 WL 1467097, *4 (W.D. La. 2015). But that is in essence what Haddox is attempting to do.

"When assessing whether sanctions should be imposed under Rule 11(b)(3), the court focuses on the reasonableness of counsel's pre-filing inquiry into the facts." Shippitsa Ltd. v. Slack, 2019 WL 277613, *9 (N.D. Tex. 2019). Relevant factors include (1) the time available to the signer for investigation; (2) the extent of the attorney's reliance upon his client for the factual support for the document; (3) the feasibility of pre-filing investigation; (4) whether the signing attorney accepted the case from another member of the bar or forwarding attorney; (5) the complexity of the factual and legal issues; and (6) the extent to which development of the factual circumstances underlying the claim requires discovery. Id., citing Childs v. State Farm Mut. Auto. Ins. Co., 29 F.3d 1018, 1026 (5th Cir. 1994).

Attorney Szwak has not offered an affidavit or other explanation of his pre-filing investigation, but the record suggests he conducted a painstaking review of paperwork with his clients to be able to make the transaction-specific allegations—complete with references to various account numbers and dates of transactions—set forth in the lengthy Amended and Restated Complaint. He also obtained from his client an affidavit (albeit dated after the filing of the challenged amended complaint) in which the client swore under oath that the allegations made in the substantially-similar original complaint were correct.

There is no indication that Szwak knew or reasonably should have known that any of the allegations were lacking evidentiary support. Szwak was also aware, at least to some extent, of Mr. Haddox's prior difficulties with the Department of Insurance, which certainly would have given him reason to believe his client's claims of changed addresses, falsified documents, and the like. See Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439, 445-56 (5th Cir. 1992) (sanctions reversed when evidence was sufficient for attorneys who filed RICO complaint to draw a "reasonable inference that some wrongdoing was afoot"). Mr. Sistrunk has responded to the motion for sanctions with an affidavit in which he points to several financial statements and other documents that appear to lend some support for his claims.

A district court has discretion as to whether to impose sanctions, and it need not provide detailed factual findings or legal conclusions. Board of Aldermen v. State of Mississippi, 2018 WL 4770713, *3 (5th Cir. 2018). The best exercise of the court's discretion in these circumstances is to allow the case to go forward and permit the parties to explore the detailed factual allegations through discovery. It is not necessary or efficient to go through the challenged allegations line-by-line. It is adequate to determine that there is not a sufficient showing that Szwak's pre-filing investigation was lacking.

It is not a proper response for a defendant faced with a detailed complaint to immediately file a motion for sanctions and, with no showing of his own, demand the plaintiff's attorney present evidence to prove the claims or see them be dismissed. At an appropriate time, Mr. Haddox can file a motion for summary judgment with respect to all or certain claims. If he specifically challenges Plaintiffs' ability to prove specific elements

of their claims, that may shift the summary judgment burden to Plaintiffs to produce supporting evidence. Celtic Marine Corp. v. James C. Justice Companies, Inc., 760 F.3rd 477, 481 (5th Cir. 2014). Mr. Haddox is attempting to do that now under the label of a motion for sanctions. His attempt should be denied.

Accordingly,

It is recommended that Gregory Lamar Haddox's **Motion for Sanctions (Doc. 22)** be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of February, 2019.

                                                  Mark L. Hornsby
                                                  U.S. Magistrate Judge