# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| GLYNN DALE SISTRUNK, ET AL. | CIVIL ACTION NO. 18-516 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| GREGORY LAMAR HADDOX, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Now before the Court are two Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Jackson National Life Insurance Company ("Jackson") and Allianz Life Insurance Company of North America ("Allianz"). [Record Documents 118 & 124]. Plaintiffs Glynn and Lawana Sistrunk ("Plaintiffs") have filed an opposition to each motion. [Record Documents 121 & 131]. Jackson and Allianz each filed a reply. [Record Documents 129 & 132]. For the reasons discussed below, the Motions to Dismiss [Record Documents 118 & 124] are hereby **GRANTED**. Plaintiffs' claims against Jackson and Allianz are **DISMISSED WITH PREJUDICE** and they are no longer parties to this lawsuit.

## BACKGROUND

Plaintiffs filed the instant lawsuit against their former investment advisor Gregory Haddox ("Haddox") and Haddox's investment firm, Lincoln Financial Advisors Corporation ("LFA"), for allegedly churning their accounts and other fraudulent activity. Record Document 1, ¶s 8–9 & 27. Plaintiffs allege that this churning occurred through Haddox's and LFA's "repeated buying and selling [surrendering and taking distributions and liquidating] plaintiffs' investments [annuities]" for the purpose of generating excessive fees for themselves. *Id.* at ¶ 128. Shortly after filing suit, Plaintiffs amended their complaint to properly name LFA, which their original complaint misidentified as Lincoln National Corporation. *See* Record Documents 7 & 9. In March of 2019,

1

Plaintiffs amended their complaint again to add several new Defendants, including Jackson and Allianz. Record Document 84, pp. 2–3. Plaintiffs allege that Haddox was a "licensed, authorized agent and employee" of Jackson and Allianz, both licensed securities and annuity dealers, and that Jackson and Allianz were therefore liable for the acts, omissions, and fault of Haddox. *Id.* at 3, 5–6. Aside from adding new Defendants, Plaintiffs re-adopted and re-alleged the entirety of their amended complaint with only minor substantive changes. *Id.* at 2. Plaintiffs have since dismissed their claims against LFA. Record Document 152.

Plaintiffs assert a variety of federal and state law claims against all Defendants, including negligence, breach of trust and fiduciary duties, violation of Texas's deceptive trade practices laws, violation of Louisiana's Blue Sky laws, misrepresentation, fraud, unjust enrichment, breach of contract, civil conspiracy, violation of the Texas Securities Act, violation of the Securities Act of 1934, 15 U.S.C. § 78, and vicarious liability/respondeat superior. Record Document 9, ¶s 133–64. Plaintiffs request judgment in their favor for all reasonable damages they sustained, legal interest, attorney's fees, and court costs. Record Document 84, p. 8.

## LEGAL STANDARD

In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a

court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A dismissal under 12(b)(6) ends the case "at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

## LAW & ANALYSIS

Because Jackson's and Allianz's motions to dismiss, as well as Plaintiffs' oppositions to both motions, address almost identical issues, the Court will analyze them together.

## I.    Relation Back of Amended Complaint

Jackson and Allianz argue that Plaintiffs' second amended complaint, filed on March 18, 2019, [Record Document 84] does not relate back to Plaintiffs' original complaint, filed on April 16, 2018 [Record Document 1]. Record Documents 118-2, p. 11; 124-1, p. 8. If the second amended complaint does not relate back, the statutes of limitation and prescriptive periods applicable to Plaintiffs' claims against Jackson and Allianz will be calculated from the filing of the second amended complaint on March 18, 2019, rather than from the filing of the original complaint on April 16, 2018. *See* Record Documents 1 & 84.

### A.    Relation Back Under Federal Law

The relation back of amended pleadings is governed by Federal Rule of Civil Procedure 15(c). When an amended complaint adds a new party, Rule 15(c)(1)(C) provides that it relates back to the original complaint when:

Rule 15(c)(1)(B) is satisfied and if, within the period provided in Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

3

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but-for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). Rule 15(c)(1)(B) requires that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Id.* at 15(c)(1)(B). Jackson and Allianz argue that Rule 15(c)(1)(C) does not allow relation back in the instant case because Plaintiffs did not make a mistake concerning their identities. Record Documents 118-2, pp. 11–12; 124-1, pp. 8–9.

In response, Plaintiffs admit that they did not make a mistake concerning the identities of Jackson and Allianz but argue that Rule 15(c)(1)(A), not 15(c)(1)(C), allows relation back under state law. Record Documents 121, pp. 2–3; 131, pp. 2–3. Plaintiffs contend that both Texas and Louisiana procedural law allow relation back in this case. Record Documents 121, pp. 3–4; 131, pp. 4–5; *see* Fed. R. Civ. P. 15(c)(1)(C)(ii). Plaintiffs submit that April 16, 2018, the date their original complaint was filed, should be the starting date for the calculation of any statutes of limitations and prescriptive periods. Record Documents 121, p. 4; 131, p. 5.

Rule 15(c)(1)(A) provides that an amendment to a pleading relates back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). The Fifth Circuit has stated that "[t]he consequence of Rule 15(c)(1)(A) is that a claim will be deemed to relate back if relation back is permitted under state law, even if it is not permitted under federal law." *Schirle v. Sokudo, USA, L.L.C.*, 484 F. App'x 893, 901 (5th Cir. 2012) (per curiam). Because Plaintiffs have admitted that they cannot meet the federal relation back test, their Louisiana and Texas law claims against Jackson and Allianz only relate back to the original complaint if the law of those states allows relation back. *Id.*

4

**B.      Relation Back Under Texas Law**

Texas procedural law permits relation back when an amended pleading "changes the facts or grounds of liability or defense . . . unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." Tex. Civ. Prac. & Rem. Code § 16.068. Plaintiffs argue that § 16.068 allows their second amended complaint to relate back to the original complaint because it "entirely relates to causes of action that are based on the same transactions and occurrences" in the original complaint. Record Documents 121, p. 4; 131, p. 4.

Contrary to Plaintiffs' assertions, § 16.068 addresses the addition of new claims, not new parties. *Brown v. Enter. Recovery Sys., Inc.*, No. 02-11-00436-CV, 2013 WL 4506582, at *11 (Tex. App.—Fort Worth Aug. 22, 2013, pet. denied) (mem. op.). Under Texas law, "[o]rdinarily, an amended pleading adding a new party does not relate back to the original pleading." *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 400 (Tex. 2011) (quoting *Alexander v. Turtur & Assoc., Inc.*, 146 S.W.3d 113, 121 (Tex. 2004)). The law provides certain exceptions to this general rule, including misidentification and misnomer. *Id.*; *see Nolan v. Hughes*, 349 S.W.3d 209, 212 (Tex. App.—Dallas 2011, no pet.). However, Plaintiffs have admitted that "this is not a misnomer situation," and do not allege any other exception to the general rule that the addition of a new party does not relate back to the original pleading. *See* Record Documents 121, pp. 2–3; 131, pp. 2–3. Therefore, Texas law does not allow the second amended complaint, naming Jackson and Allianz as defendants, to relate back to the filing of the original complaint.

**C.      Relation Back Under Louisiana Law**

In Louisiana, the relation back of pleadings is governed by Louisiana Code of Civil Procedure article 1153, which states:

> When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

original pleading, the amendment relates back to the date of filing the original pleading.

La. Code Civ. Proc. Ann. art. 1153. This article is based upon Federal Rule of Civil Procedure 15(c) and alters the general rule that a new defendant may not be added after prescription has run. *Ray v. Alexandria Mall, Through St. Paul Prop. & Liab. Ins.*, 434 So. 2d 1083, 1085–86 (La. 1983). In *Ray v. Alexandria Mall*, the Louisiana Supreme Court set forth the following criteria for determining whether Article 1153 allows an amendment to relate back to the filing of the original petition when it changes the identity of the parties being sued:

> (1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading;
>
> (2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;
>
> (3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him; and
>
> (4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.

*Id.* at 1086–87. The *Ray* criteria seek "to prevent injustice to plaintiffs who mistakenly named an incorrect defendant, at least when there was no prejudice to the subsequently named correct defendant . . . [;] the rule however [does] not apply when the amendment sought to name a new and unrelated defendant." *Renfroe v. State ex rel. Dept. of Transp. and Dev.*, 2001-1646 (La. 2/26/02); 809 So. 2d 947, 952–953 (quoting *Findley v. City of Baton Rouge*, 570 So. 2d 1168, 1170 (La. 1990)).

The fourth *Ray* criteria requires "an identity of interest between the original and new defendants." *Allstate Ins. Co. v. Doyle Giddings, Inc.*, 40,496 (La. App. 2 Cir. 1/25/06); 920 So. 2d

6

404, 406–407. The jurisprudence surrounding this identity of interest indicates that "there must be a relationship between the original defendant and the new defendant which would allow an inference of notice." *Hardy v. A+ Rental, Inc.*, 95-2176 (La. App. 4 Cir. 5/8/96); 674 So. 2d 1155, 1157. "Sufficiency of the identity of interests depends upon the closeness of the relationship between the parties in their business operations and other activities . . . ." *Findley*, 570 So. 2d at 1171. An identity of interest has been found in such relationships as between a parent corporation and a wholly owned subsidiary and "between corporations with interlocking officers or directors." *Id.* (internal citations omitted).

In this case, Plaintiffs have failed to allege facts showing that Jackson and Allianz had an identity of interest with Haddox or LFA, the originally named defendants. In the second amended complaint, Plaintiffs identify Allianz and Jackson as separate entities from Haddox and LFA. Record Document 84, pp. 2–3. The second amended complaint also states that Haddox was an employee of Allianz and Jackson. *Id.* at 5. As such, there is no identity of interests between Haddox, Allianz, and Jackson. See *Brown v. City of New Orleans*, 580 So. 2d 1093, 1097 (La. Ct. App. 1991) (finding an employer-employee relationship to be insufficient for an amendment to relate back as to wholly new and unrelated parties). Because Plaintiffs have not alleged facts showing any identity of interest between Allianz and Jackson and LFA and Haddox, the second amended complaint naming new defendants cannot relate back to the original complaint under Louisiana law.

### D.    Interruption of Prescription Under Louisiana Law

Plaintiffs' oppositions do not address Article 1153 or the relation back of amendments under Louisiana law. Instead, Plaintiffs attempt to circumvent these requirements by asserting that all Defendants to this suit are solidary obligors, and that "[t]he interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs." Record Documents 121,

p. 4; 131, p. 5 (quoting Louisiana Civil Code art. 1799). In other words, Plaintiffs assert (1) that their original complaint timely interrupted prescription as to Haddox and LFA and (2) that interruption of prescription against Haddox and LFA applies to Jackson and Allianz because all Defendants are solidary obligors.

Under Louisiana law, "[a]n obligation is solidary for the obligors when each obligor is liable for the whole performance." La. Civ. Code art 1794. Importantly, "[s]olidarity of obligation shall not be presumed." La. Civ. Code art. 1796. Instead, "[a] solidary obligation arises from a clear expression of the parties' intent or from the law." *Id.* The Louisiana Supreme Court has established that a solidary obligation exists when the obligors "(1) are obliged to the same thing, (2) so that each may be compelled for the whole, and (3) when payment by one exonerates the other from liability toward the creditor." *Bellard v. Am. Cent. Ins. Co.*, Nos. 2007-C-1335, 2007-C-1399 (La. 4/18/08); 980 So. 2d 654, 663–64 (quoting *Hoefly v. Gov't Emp. Ins. Co.*, 418 So. 2d 575, 579 (La. 1982)).

Because Plaintiffs claim that prescription was interrupted as to Jackson and Allianz based on solidary liability between the Defendants, Plaintiffs bear the burden of proving that such solidarity exists. *Kelley v. General Ins. Co. of Am.*, No. 2014 CA 0180, (La App. 1 Cir. 12/23/14); 168 So. 3d 528, 534. However, Plaintiffs have completely neglected to allege facts demonstrating any of the *Bellard* elements as to any of the Defendants. This conclusory assertion that Defendants are solidary obligors is insufficient to establish solidarity, even at the motion to dismiss stage. *See McDonnel Grp., L.L.C. v. DFC Grp., Inc.*, No. 19-9391, 2020 WL 871210, at *10 (E.D. La. Feb. 21, 2020). Plaintiffs have not met their burden of demonstrating that Jackson and Allianz are solidary obligors with Haddox and LFA.

In their oppositions, Plaintiffs devote only one sentence to the issue of solidary liability, stating that "plaintiffs pled that defendants were solidary obligors, for reasons explained in the operative complaint." Record Documents 121, p. 4; 131, p. 5. Plaintiffs' second amended complaint merely requests judgment against all Defendants "jointly, severally and in solido to the maximum possible extent permitted by law." Record Document 84, p. 8. The second amended complaint also contains a paragraph in which Plaintiffs allege that Jackson and Allianz, as well as other Defendants not involved in the instant motions, are liable for a wide variety of actions that include a mixture of independent actions by Defendants and actions by Haddox for which Defendants are allegedly responsible. *Id.* at 5–7.

Plaintiffs' claims against Jackson and Allianz for their independent actions will be analyzed in the sections below. Plaintiffs' claims that Jackson and Allianz are liable for the actions of Haddox appear to be based on their allegation that Haddox was a "licensed, authorized agent and employee" of Jackson and Allianz. Record Document 84, p. 5. However, as noted by Allianz, the complaint identifies Haddox as a broker rather than an agent. Record Document 124, pp. 3–4 n.5; *see* Record Document 9, ¶s 8, 13. Under Louisiana law, an insurance agent is one who is employed by the insurer to solicit risks and effect insurance, whereas an insurance broker "solicit[s] insurance from the public under no employment from any special company, placing the insurance with any company selected by the insured or by the broker himself." *Am. Zurich Ins. Co. v. Johnson*, No. 37,567-CA, (La. App. 2 Cir. 7/30/03); 850 So. 2d 1112, 1115. The main distinction between agents and brokers is that "absent special circumstances, the broker is the agent of the insured in procuring the policy of insurance and does not represent the insurer." *Id.* (citing *Tassin v. Golden Rule Ins. Co.*, No. 94 CA 0362 (La. App. 1 Cir. 12/22/94); 649 So. 2d 1050, 1054).  As a result, "[t]he acts of the agent of the insured are not imputable to the insurer." *Id.*

It is clear from the complaint that Haddox was acting as an insurance broker. He told Plaintiffs that he could procure annuities for them from multiple companies. Record Document 9, ¶ 8. The complaint reflects that Haddox did procure annuities for Plaintiffs from multiple companies, including Allianz, Jackson, and National Western Life Insurance Company. *Id.* at ¶s 16, 42, & 98. Plaintiffs have failed to allege any special circumstances that would warrant a departure from the general rule that insurance brokers are agents of the insured rather than the insurer. Consequently, not only have Plaintiffs failed to allege facts demonstrating that Jackson and Allianz are solidarily liable with Haddox and LFA, Louisiana law mandates that Jackson and Allianz cannot be solidarily liable for Haddox's wrongdoing. Therefore, any interruption of prescription as to Haddox and LFA does not apply to Jackson or Allianz.

### E.    Conclusion as to the Relation Back of the Second Amended Complaint

As discussed in the preceding sections, Plaintiffs' second amended complaint does not relate back to their original complaint under federal, Texas, or Louisiana law. The Court will now analyze whether Plaintiffs' claims against Jackson and Allianz are time-barred, calculating all statutes of limitation and prescriptive periods from March 18, 2019, when the second amended complaint was filed. *See* Record Document 84.

## II.    **Plaintiffs' Federal Claims**

Plaintiffs assert that Defendants are liable for violations of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. 78a, *et seq.*, for "making false statements and omissions of material fact" and "the use of a manipulative scheme, device or contrivance, in connection with the sale of securities." Record Document 9, ¶ 155. Plaintiffs accuse Defendants of acting with intent to defraud by churning their accounts, claiming that "[t]he securities transactions by defendants involving plaintiffs' monies, securities and accounts were excessive in light of plaintiff's stated investment

objectives and defendants repeatedly churned plaintiffs' investment and accounts and further placed

plaintiffs' invested funds into unsuitable security vehicles." *Id.* at ¶s 157–58.

Section 10(b) of the SEA states that "[i]t shall be unlawful for any person . . . (b) [t]o use or

employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive

device or contrivance in contravention of such rules and regulations as the [Securities and

Exchange] Commission may prescribe . . . ." 15 U.S.C. § 78j. Similarly, Rule 10b-5 of the Rules

and Regulations Under the SEA provides that

> [i]t shall be unlawful for any person, directly or indirectly . . .
>
> (a) [t]o employ any device, scheme, or artifice to defraud,
>
> (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. The Court will refer to Plaintiffs' claim pursuant to 15 U.S.C. § 78j(b) and

SEC Rule 10b-5 as a "§ 10(b) claim."

The churning that Plaintiffs allege in this case constitutes a violation of § 10(b). The Fifth

Circuit has stated that "[c]hurning occurs when a securities broker enters into transactions and

manages a client's account for the purposes of generating commissions and in disregard of his

client's interests." *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 324 (5th Cir. Unit A Feb. 1981)

(abrogated on other grounds by *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985)).

"Churning is a term of art which is actually a synonym for overtrading." 36 Am. Jur. 1, *Broker-*

*Dealer Fraud: Churning* § 2 (2020). In order to establish a cause of action for churning, a plaintiff

must prove:

(1) the trading in his account was excessive in light of his investment objectives;

(2) the broker in question exercised control over the trading in his account; and

(3) the broker acted with the intent to defraud or with reckless and willful disregard for the investor's interests.

*Id.* "The act of churning itself is a deception" and, as such, it constitutes a cause of action under §

10(b). *Id.* at § 3.

### A.    Arguments of the Parties

The time limit for filing a private action that "involves a claim of fraud, deceit, manipulation

or contrivance in contravention of" the SEA is governed by 28 U.S.C. § 1658(b), which provides

that such actions may be brought not later than the earlier of "(1) 2 years after the discovery of facts

constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). Jackson and

Allianz argue that Plaintiffs' § 10(b) claim is time-barred by § 1658(b)(2) because Plaintiffs most

recently purchased an annuity from Jackson on or about October 11, 2012, and from Allianz on or

about October 17, 2011, but did not name them as Defendants until March 18, 2019. Record

Documents 118-2, p. 18; 124-1, pp. 15–16. In opposition, Plaintiffs argue that churning is a

continuing tort and therefore the term "violation" in § 1658(b)(2) does not refer to the sale of each

individual annuity but instead refers to the date when the churning scheme was completed, meaning

their claims against Jackson and Allianz were timely filed. Record Documents 121, pp. 5–6; 131,

pp. 5–6.

### B.    Applicable Law

The five-year time limit contained in § 1658(b)(2) is an "unqualified bar on actions

instituted 5 years after such violation." *Stein v. Regions Morgan Keegan Select High Income Fund,*

*Inc.*, 821 F.3d 780, 787 (6th Cir. 2016) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 650

(2010)) (internal quotations omitted). As a statute of repose, § 1658(b)(2) is "not a limitation of a

plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit." *SRM Global Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 176 (2d Cir. 2016) (quoting *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102, 104 (2d Cir. 2004)). Section 1658(b)(2) is not subject to equitable tolling and creates a substantive right of defendants to be free from liability five years after a violation. *Id.* at 177.

In order to determine whether the federal claims against Jackson and Allianz are time-barred, the Court must determine when, based on the facts set forth in the complaint, Jackson and Allianz violated the SEA. This determination is necessitated by the difference between a statute of limitations and a statute of repose. Both types of statutes can operate to bar a plaintiff's suit, "[b]ut the time periods specified are measured from different points, and the statutes seek to attain different purposes and objectives." *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014). A statute of limitations provides a time limit for filing suit in a civil case, based on the date when the claim accrued. *Id.* (quoting Black's Law Dictionary 1546 (9th ed. 2009)). On the other hand, a statute of repose "puts an outer limit on the right to bring a civil action." *Id.* This limit is measured from "the date of the last culpable act or omission of the defendant," rather than the date on which the claim accrued. *Id.* The limit set forth in a statute of repose is an absolute bar on a defendant's temporal liability, unrelated to whether an injury has occurred or been discovered. *Id.*

In *In re Exxon Mobil Corp Securities Litigation*, the court was tasked with determining when § 1658(b)(2)'s statute of repose began to run with regard to a § 10b claim. 500 F.3d 189, 199 (3d Cir. 2007). The court stated that "the specific acts targeted by a § 10(b) cause of action are fraudulent statements themselves." *Id.* at 200. Thus, the court concluded that it was "more consonant with the traditional understanding of how a statute of repose functions for the repose period[] of . . . § 1658(b)(2) to begin from the date" of the defendant's alleged misrepresentation.

13

*Id.* The court found that this view of the text was also supported by § 1658(b)(2) because it sets the statute of repose relative to the "violation" rather than the "accrual" of the cause of action. *Id.*

Another court in this district has previously applied § 1658(b)(2) to a churning claim brought under § 10b. In *Potier v. JBS Liberty Securities, Inc.*, plaintiffs Joseph and Glenda Potier alleged that Roger Lanclos ("Lanclos"), a securities broker, and several brokerage firms were liable to them for losses suffered as a result of the unlawful churning of their investment accounts. No. 13-0789, 2014 WL 4219253, at *1, *8 (W.D. La. Aug. 22, 2014). One of the defendants, Metropolitan Life Insurance Company ("MetLife"), filed a motion to dismiss pursuant to Rule 12(b)(6) alleging that the plaintiffs failed to state a claim, or, alternatively, a motion for summary judgment pursuant to Rule 56, alleging that the claims were time-barred under both state and federal law. *Id.* at *2. Lanclos was an employee of MetLife from November of 1986 until May of 2001. *Id.* at *1. MetLife issued two annuity contracts to Joseph Potier, which were cash surrendered on May 1, 1989. *Id.* MetLife also issued an annuity contract to Glenda and Joseph Potier jointly, which was cash surrendered in September of 2001. *Id.* at *1–2. MetLife was not related to any of the other entity defendants. *Id.* at *2.

The plaintiffs alleged that Lanclos had, among other misdeeds, churned their investment accounts in violation of the SEA. *Id.* at *10. In opposition to MetLife's motion, they argued that their suit was timely because it was filed in 2013, and Lanclos acted as their brokerage agent until at least December of 2010. *Id.* at *8. The court rejected this argument and held that under § 1658(b)(2), "the outside deadline for the filing of claims under the federal securities regulations is five years after the violation occurred," regardless of when the plaintiffs might have discovered the alleged wrongdoing. *Id.* at *11. Thus, the plaintiffs' federal securities claim against MetLife, based on annuities that were cash surrendered in 1989 and 2001, was time-barred. *Id.*

14

The same conclusion was reached by the court in *Escalon v. World Group Securities, Inc.*, No. 5:07-CV-214-C, 2008 WL 5572823, at *3 (N.D. Tex. Nov. 14, 2008). In *Escalon*, plaintiffs Ben and Maria Escalon were preparing for their retirement and looking for a safe place to invest their retirement funds in the summer of 2000. *Id.* at *1. The plaintiffs invested their money with Lance Cansino ("Cansino"), an investment broker who managed World Marketing Alliance, which was later bought by World Group Securities, Inc ("World Group"). *Id.* The investment performed poorly and by 2007 it had lost nearly two-thirds of its original value, forcing plaintiffs to stop withdrawing monthly sums and come out of retirement. *Id.* The plaintiffs filed suit against Cansino and World Group on August 28, 2007, asserting securities violations, including an allegation that the defendants engaged in excessive trading of their accounts, which amounted to churning. *Id.* at *2.

The defendants moved for summary judgment as to the plaintiffs' federal churning claim on the grounds that it was time-barred by § 1658(b)(2). *Id.* at *3. The court observed that the five-year time period begins to run "the moment the violation (or sale) occurs, regardless of the claimant's discovery." *Id.* The plaintiffs argued that, because churning is a unified offense, their churning claim did not accrue until the last trade made by the defendants in 2007 and, therefore, any trade made before that time forms part of the churning claim. *Id.* The court disagreed, holding that the churning claim could not stand on transactions that occurred more than five years before the plaintiffs filed suit. *Id.*

### C.    Application

The Court finds the conclusions of *Potier* and *Escalon* to be persuasive and adopts them in the instant case. Plaintiffs offer no legal support or authority for their assertion that the five-year statute of repose should not begin to run until the Defendants' alleged churning scheme was

discovered or completed. *See* Record Documents 121, pp. 5–6; 131, pp. 5–6. Furthermore, this argument conflicts with case law on this subject and the underlying purpose of statutes of repose in general and § 1658(b)(2) specifically. *See Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013)) ("A statute of repose extinguishes a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts.") (internal quotations omitted). As discussed above, § 1658(b)(2)'s repose period begins to run the moment the violation or sale occurs. Thus, Jackson and Allianz cannot be held liable for culpable acts that occurred more than five years before Plaintiffs filed suit against them.

In this case, Plaintiffs assert that Jackson and Allianz are liable for Haddox's churning of their accounts that occurred when Haddox was a "licensed, authorized agent and employee" of Jackson and Allianz. Record Document 84, pp. 5–6. As discussed previously, churning occurs "when a securities broker enters into transactions and manages a client's account for the purpose of generating commissions and in disregard of his client's interests." *Miley*, 637 F.2d at 324. According to Plaintiffs, the last transaction that occurred between Haddox and Jackson involving their account occurred on October 11, 2012, when Haddox created a Jackson annuity account in Plaintiffs' name and transferred $ 94,336.00 into this annuity. Record Document 9, ¶ 53. Likewise, the last transaction that Plaintiffs describe involving Allianz occurred on October 17, 2011, when Haddox created an Allianz account for Plaintiffs and transferred more of their holdings into that account. *Id.* at ¶ 40. Thus, Jackson and Allianz last engaged in transactions involving Plaintiffs in 2011 and 2012, more than five years before they were named as Defendants on March 18, 2019. Record Documents 84. As such, Plaintiffs' federal claims against Jackson and Allianz are time-barred by § 1658(b)(2)'s five-year statute of repose. The motions to dismiss [Record Documents

118 & 124] are hereby **GRANTED** as to Plaintiffs' federal claims under § 10(b), and those claims are hereby **DISMISSED WITH PREJUDICE**.

For the sake of clarity, the Court notes that Plaintiffs' claims against Jackson and Allianz arise from the sale of annuities, which are a separate type of investment from securities. In reaching the above holding, the Court makes no determination as to whether the SEA and Rule 10b-5 apply to the sale of the annuities in the instant case because neither Jackson nor Allianz raised this issue. Instead, like the court in *Potier*, this Court holds that, to the extent these claims arise under federal law, they are time barred by § 1658(b)(2). *See Potier*, 2014 WL 4219253, at *10.

### III.    Plaintiffs' Louisiana Law Claims

Plaintiffs assert that each Defendant's acts and omissions in this case violated Louisiana's Blue Sky Laws, which "define unlawful conduct violating the state's securities laws." Record Document 9, ¶ 139. Jackson and Allianz argue that all of Plaintiffs' Louisiana law claims are perempted, meaning time-barred, by Louisiana Revised Statute § 9:5606, which governs actions against insurance brokers. Record Documents 118-2, p. 14; 124-1, pp. 10–11. Section 9:5606(A) provides:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue *within one year* from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, *in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.*

La. R.S. § 9:5606(A) (emphasis added). Section (D) of this statute clarifies that "[t]he one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods" that "may not be renounced, interrupted, or suspended." *Id.* at § 9:5606(D). According to the

Louisiana Civil Code, peremption is "a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."[1] La. Civ. Code art. 3458.

First, the Court agrees that Plaintiffs' claims against Jackson and Allianz are subject to the peremptive periods found in § 9:5606. All of the claims alleged against Jackson and Allianz arise from Haddox's actions in purchasing annuities from them on Plaintiffs' behalf. Record Document 84, p. 6. Annuities are classified as a form of insurance by Louisiana law. La. R.S. § 22:47(17). Thus, Plaintiffs' claims against Jackson and Allianz arise from an engagement to provide insurance services and, consequently, "fall within the purview" of § 9:5606. *Klein v. Am. Life & Cas. Co.*, 2001-2336 (La. App. 1 Cir. 6/27/03); 858 So. 2d 527, 531 (applying the peremptive periods of § 9:5606 to the claims of a plaintiff who purchased annuities, even though the lawsuit initially arose out of an agreement to provide estate planning services rather than insurance services).

Next, Plaintiffs attempt to prevent the application of § 9:5606 to their Louisiana law claims by arguing that churning is a continuing tort and therefore that any prescriptive periods did not begin to run until the churning ceased. Record Documents 121, pp. 11–12; 131, pp. 11–12. However, in Louisiana the continuing tort doctrine is a suspensive principle and is therefore inapplicable to claims governed by the peremptive time limitations in § 9:5606. *Sitaram, Inc. v. Bryan Ins. Agency, Inc.*, 47,337, (La. App. 2 Cir. 9/19/12); 104 So. 3d 524, 530. "As such, if a claim is not filed within three years of the alleged act, it is extinguished by peremption, regardless of whether or not it was filed within one year from the date of discovery." *Id.* As discussed in the previous section, Plaintiffs assert that the last transaction between themselves and Jackson and

---

[1] Peremptive periods, as defined in Louisiana Civil Code article 3458, are the Louisiana law equivalent to statutes of repose as discussed in the previous section. *See CTS Corp.*, 573 U.S. at 7.

Allianz occurred in 2012 and 2011 respectively, more than three years before the second amended complaint was filed on March 18, 2019. Record Document 9, ¶s 40 & 53; *see* Record Document 84. Consequently, the continuing tort doctrine cannot prevent the application of § 9:5606's peremptive period to Plaintiffs' Louisiana law claims.

Finally, Plaintiffs argue that the peremptive periods of § 9:5606 do not apply here because their claims involve fraud. Record Documents 121, pp. 13–14; 131, pp. 13–14. Plaintiffs correctly point out that "[t]he peremptive period provided in Subsection A of [§ 9:5606] shall not apply in cases of fraud, as defined in Civil Code Article 1953." La. R.S. § 9:5606(C). Claims of fraud brought under § 9:5606 are instead subject to a liberative prescriptive period of one year as set forth in Louisiana Civil Code article 3492. *Shermohmad v. Ebrahimi*, 06-512 (La. App. 5 Cir. 10/31/06); 945 So. 2d 119, 122. Prescription begins to run from the day the injury or damage is sustained, meaning when "the damage has 'manifested itself with sufficient certainty to support accrual of a cause of action.'" *Id.* (quoting *Cole v. Celotex Corp.*, 93-90 (La. 7/1/93); 620 So. 2d 1154, 1156). In this case, Plaintiffs admit that they knew of the damage allegedly caused by Defendants on January 18, 2018. Record Document 9, ¶ 123. Because Plaintiffs did not file suit against Jackson and Allianz until more than a year later, on March 18, 2019, any claims of fraud Plaintiffs may have sought to assert against them are prescribed.

The peremptive time periods set forth in § 9:5606(A) bar Plaintiffs' Louisiana law claims against Jackson and Allianz. Thus, their motions to dismiss [Record Documents 118 & 124] are hereby **GRANTED** as to Plaintiffs' Louisiana law claims and those claims are hereby **DISMISSED WITH PREJUDICE**.

IV.  **Plaintiffs' Claims Under the Texas Securities Act**

Plaintiffs allege that Defendants violated the Texas Securities Act ("TSA"), which imposes liability on sellers who make false statements or omissions related to the sale of securities. Record Document 9, ¶s 148–54; *see* Tex. Rev. Civ. Stat. art. 581-33(A)(2). Jackson and Allianz argue that this claim is time-barred by the TSA's five-year statute of repose. Record Documents 118-2, pp. 17–18; 124-1, pp. 15–16. In opposition, Plaintiffs again argue that churning is a "unified offense" and a continuing tort, and therefore statutes of limitation and repose "should only commence once a victim, particularly an unsophisticated consumer, has knowledge of specific facts showing that churning has occurred." Record Documents 121, p. 18; 131, pp. 18–19.

The TSA provides that "[n]o person may sue under Section 33(A)(2) . . . more than five years after the date of the sale" underlying the alleged securities violation. Tex. Rev. Civ. Stat. Ann. art. 581-33(H)(2)(b). Although this five-year limit is titled as a statute of limitations, "this TSA provision has generally been characterized as a statute of repose." *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 476 (Tex App.—Houston [1st Dist.] 2018, pet. granted). As a result, this time period expires "five years from the date the securities at issue were sold." *F.D.I.C. v. RBS Sec. Inc.*, 798 F.3d 244, 247 (5th Cir. 2015). Thus, Plaintiffs' claims against Jackson and Allianz are barred for the same reason the federal securities claim were barred—because they last sold securities to Plaintiffs more than five years before they were named as defendants in this lawsuit.

In addition to being time-barred, Plaintiffs' claims under the TSA are not viable in this case because the TSA does not apply to annuities. The statute provides that the definition of the term security "shall not apply to any . . . annuity contract." Tex. Rev. Civ. Stat. Ann. art. 581-4(A). Thus, Plaintiffs' claims against Jackson and Allianz arising from the sale of annuities do not give rise to a cause of action under the TSA. *See Gallier v. Woodbury Fin. Servs., Inc.*, No. H-14-888, 2015

WL 1296351, at *11 (S.D. Tex. Mar. 23, 2015). Accordingly, the motions to dismiss [Record Documents 118 & 124] are hereby **GRANTED** with respect to Plaintiffs' claims under the TSA and those claims are **DISMISSED WITH PREJUDICE**.

## V.   Remaining Claims

Along with their claims asserted under federal securities law, Louisiana law, and the TSA, Plaintiffs also allege that Defendants are liable for negligence, breach of trust and fiduciary duties, violations of Texas's deceptive trade practice laws, misrepresentation, fraud, unjust enrichment, breach of contract, and civil conspiracy to damage Plaintiffs. Record Document 9, ¶s 133–63. However, the complaint does not contain specific facts detailing how each Defendant is liable for each cause of action, but instead states that all Defendants are liable for all causes of action.[2] Additionally, aside from the allegations pertaining to Texas's deceptive trade practice laws, the complaint does not specify whether these causes of action are alleged under the laws of a particular state or federal common law. Further complicating the vagueness of the complaint is its length, containing over 150 paragraphs in its 45 pages. *See id.*

Federal Rule of Civil Procedure 8 mandates that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "That statement needs to be sufficient to 'give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests[.]'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 287 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Rule 8 requires a complaint to "do more than name laws that may have been violated by the defendant; it must also allege facts regarding what

---

[2] Plaintiffs' second amended complaint added defendants but re-alleged the entirety of the amended complaint [Record Document 9] with only minor changes. Record Document 84, p. 2. Therefore, Plaintiffs clearly intended the general allegations in the amended complaint to apply to the defendants added in the second amended complaint.

conduct violated those laws." *Anderson v. U.S. Dept. of Housing and Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). A complaint "must put the defendant on notice as to what conduct is being called for defense in a court of law." *Id.* at 528–29.

Upon review of the complaint, the Court finds that it is so broad that it constitutes a "shotgun" pleading, which is defined as a pleading that fails "to give the defendants adequate notice of the claims against them and the grounds upon which claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Here, Plaintiffs have asserted "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* Plaintiffs' second amended complaint fails to state a claim upon which relief can be granted because it does not comply with Rule 8 and is therefore subject to dismissal. *See Landavazo v. Toro Co.*, 301 F. App'x 333, 336–37 (5th Cir. 2008) (per curiam). Therefore, the motions to dismiss filed by Jackson and Allianz [Record Documents 118 & 124] are hereby **GRANTED** and all remaining claims against Jackson and Allianz are **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons discussed above, the Motions to Dismiss [Record Documents 118 & 124] are hereby **GRANTED**. Plaintiffs' claims against Jackson and Allianz are hereby **DISMISSED WITH PREJUDICE**. Jackson and Allianz are no longer parties to this lawsuit.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 19th day of May, 2020.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE

22