UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GLYNN DALE SISTRUNK, ET AL. | CIVIL ACTION NO. 18-516 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| GREGORY LAMAR HADDOX, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Now before the Court is a Motion for Summary Judgment, filed by Defendant Gregory Haddox ("Haddox") pursuant to Federal Rule of Civil Procedure 56. [Record Document 176]. The motion has been fully briefed. [Record Documents 176–77, 183–84, & 189–90]. For the reasons discussed below, the Motion for Summary Judgment [Record Document 176] is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

Plaintiffs Glynn and Lawana Sistrunk ("Plaintiffs") filed the instant lawsuit against their former investment advisor Gregory Haddox and Haddox's investment firm, Lincoln Financial Advisors Corporation ("LFA"), for allegedly churning their accounts and other fraudulent activity. Record Document 1, ¶s 8–9 & 27. Plaintiffs allege that this churning occurred through Haddox's and LFA's "repeated buying and selling [surrendering and taking distributions and liquidating] plaintiffs' investments [annuities]" for the purpose of generating excessive fees for themselves. *Id.* at ¶ 128. Shortly after filing suit, Plaintiffs amended their complaint to properly name LFA, which their original complaint misidentified as Lincoln National Corporation. *See* Record Documents 7 & 9. In March of 2019, Plaintiffs amended their complaint again to add several new Defendants, including Jackson National Life Insurance Company ("Jackson") and Allianz Life Insurance Company of North America ("Allianz"). Record Document 84, pp. 2–3. Plaintiffs allege that

1

Haddox was a "licensed, authorized agent and employee" of Jackson and Allianz, both licensed securities and annuity dealers, and as such, Jackson and Allianz were therefore liable for the acts, omissions, and fault of Haddox. *Id.* at 3, 5–6. Aside from adding new Defendants, Plaintiffs re-adopted and re-alleged the entirety of their amended complaint with only minor substantive changes. *Id.* at 2. Plaintiffs have since dismissed their claims against LFA. Record Document 152. The Court dismissed all claims against Jackson and Allianz. Record Documents 157, 181, & 186. The only remaining Defendants are Haddox, National Union Fire Insurance Company of Pittsburg, PA, and Continental Casualty Company. *See* Record Document 186.

Plaintiffs assert a variety of federal and state law claims against Haddox, including negligence, breach of trust and fiduciary duties, violation of Texas's deceptive trade practices laws, violation of Louisiana's Blue Sky laws, misrepresentation, fraud, unjust enrichment, breach of contract, civil conspiracy, violation of the Texas Securities Act, and violation of the Securities Act of 1934, 15 U.S.C. § 78. Record Document 9, ¶s 133–64. Plaintiffs request judgment in their favor for all reasonable damages they sustained, legal interest, attorney's fees, and court costs. Record Document 84, p. 8. Now, Haddox has filed a Motion for Summary Judgment seeking to dismiss all claims against him.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party,

the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## **LAW & ANALYSIS**

Plaintiffs have brought claims under federal law, Texas law, and Louisiana law. The Court will analyze each in turn.

I.  **Plaintiffs' Federal Law Claims**

Plaintiffs assert that Haddox is liable for violations of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. 78a, *et seq.*, for the alleged churning, meaning excessive trading, of Plaintiffs' investment accounts. Record Document 9, ¶s 155 & 157–58. Haddox contends that the SEA does not apply to claims arising from the sale of annuities because they are exempted as a form of insurance. *See* 15 U.S.C. § 77c(a)(8). Plaintiffs counter that Louisiana's definition of annuities does not control the SEA definition. Record Document 183, p. 2. Section 77c(a) provides that

> [e]xcept as hereinafter expressly provided, the provisions of this subchapter shall not apply to any of the following classes of securities: . . . (8) Any insurance or endowment policy or annuity contract or optional annuity contract, issued by a corporation subject to the supervision of the insurance commissioner, bank commissioner, or any agency or officer performing like functions, of any State or Territory of the United States.

15 U.S.C. § 77c(a). However, the United States Supreme Court has found that the classification of a product as an annuity is not dispositive as to whether the SEA's insurance exemption applies. *See SEC v. Variable Annuity Life Ins. Co. of Am.* (*VALIC*), 359 U.S. 65 (1959); *SEC v. United Ben. Life Ins. Co.*, 387 U.S. 202 (1967). Typically, fixed annuities are insurance and exempted under § 77c(a)(8). However, variable annuities are considered securities under federal law. *See VALIC*, 359 U.S. 65 (1959). A third type of annuity, the fixed index annuity ("FIA"), has traits of both fixed annuities and variable annuities. The state of the law is not clear as to whether FIAs are more akin to variable annuities or fixed annuities. *See Am. Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166 (D.C. Cir. 2010); *Malone v. Addison Ins. Mktg., Inc.*, 225 F. Supp. 2d 743, 748–51 (W.D. Ky. 2002); *Van Dyke v. White*, 2019 IL 121452, 131 N.E.3d 511, 526 n.5. Haddox states that the annuities at issue are fixed annuities and thus exempted from the SEA. Record Documents 176-1, pp. 11, 14; 189, pp. 1–2. Plaintiffs did not even respond to this assertion even though it was the crux of Haddox's SEA argument. Plaintiffs' failure to respond indicates acquiescence to the fact that the annuities at

issue are exempt from federal securities law. Thus, for the purpose of summary judgment, the Court deems it admitted that the annuities at issue should be treated like fixed annuities.[1] *See* Fed. R. Civ. P. 56(e)(2). As such, the SEA does not apply to these annuities. Therefore, Haddox's motion for summary judgment as to Plaintiffs' federal law claims is **GRANTED.**

## II. Plaintiffs' Texas Law Claims

Plaintiffs, who reside in Kilgore, Texas, allege that Haddox is liable to them for violating the Texas Securities Act ("TSA") and the Texas Deceptive Trade Practices Act ("DTPA"). The Court will address each in turn.

### A. Texas Securities Act

Plaintiffs allege that Haddox violated the TSA, which imposes liability on sellers who make false statements or omissions related to the sale of securities. Record Document 9, ¶s 148–54; *see* Tex. Rev. Civ. Stat. art. 581-33(A)(2). However, in the Court's prior opinion in this case, it dismissed Plaintiffs' claims under the TSA against Jackson and Allianz because Plaintiffs' claims arise from the sale of annuities, not securities. *See Sistrunk v. Haddox*, No. 18-516, 2020 WL 2549699, at *10 (W.D. La. May 19, 2020). Like the SEA, a prerequisite for maintaining suit under the TSA is the sale of securities. Unlike the SEA, the TSA exempts all annuities from its coverage regardless of the type. *See* Tex. Rev. Civ. Stat. Ann. art. 581-4(A) (providing that the term security "shall not apply to any . . . annuity contract . . . or any contract or agreement in relation to and in consequence of any such policy or contract"); *Gallier v. Woodbury Fin. Servs., Inc.*, No. H-14-888, 2015 WL 1296351, at *11 (S.D. Tex. Mar. 23, 2015) (explaining difference between definition of

---

[1] The Court has no duty to sift through the record and determine what type of annuities are at issue. The burden has shifted to Plaintiffs to specifically identify in the record the type of annuities at issue and argue whether they should be considered securities instead of annuities under the SEA. They have failed to do so.

securities under SEA and TSA). Thus, Plaintiffs' claims against Haddox arising from the sale of annuities do not give rise to a cause of action under the TSA. Accordingly, the motion for summary judgment is **GRANTED** with respect to Plaintiffs' claims under the TSA.

    B. <u>Texas Deceptive Trade Practices Act</u>

In Plaintiffs' complaint, they vaguely allege that all defendants are liable to them for violating the DTPA. *See* Record Document 9, ¶s 137–38. However, they do not particularly allege how Haddox violated the DTPA. Moreover, Plaintiffs do not mention the statute in the body of their opposition brief. Further, Plaintiffs do not make a specific argument in their opposition brief as to the application of the DTPA after Haddox challenged the sufficiency of the evidence on these claims. Plaintiffs only make a generic statement that the continuing tort doctrine suspends prescription under any Texas law. Record Document 183, pp. 13–14. As such, the Court finds this cause of action has been abandoned. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff's failure "to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss" and "her failure to pursue this claim beyond her complaint constituted abandonment" of the claim). Therefore, Haddox's motion for summary judgment is **GRANTED** as to Plaintiffs' claims under the DTPA.

    **III.**     <u>**Plaintiffs' Louisiana Law Claims**</u>

In Plaintiffs' complaint, they accuse Haddox of churning their investment accounts in violation of Louisiana Securities Law, La. R.S. § 51:701, *et seq.*, otherwise known as Louisiana's Blue Sky Laws, which "define unlawful conduct violating the state's securities laws." Record Document 9, ¶ 139. However, in their opposition brief, they make no mention of this statute after Haddox argued that he was entitled to summary judgment as to this claim. Instead, Plaintiffs limited their discussion of a standalone churning claim to federal law. It appears that Plaintiffs have shifted

6

to arguing that churning is a subset of their Louisiana law claims of fraud and breach of fiduciary duty.[2] As such, the Court finds that Plaintiffs have abandoned their standalone churning claim under Louisiana law. Therefore, Haddox's motion for summary judgment is **GRANTED** as to Plaintiffs' churning claim arising under Louisiana's Blue Sky Laws.[3]

Plaintiffs assert that Haddox's acts and omissions constituted fraud and a breach of fiduciary duty under Louisiana law. *See* Record Documents 9 & 183. Plaintiffs argue that Haddox, as their broker, breached his fiduciary duty by churning their investment accounts and defrauded them in the process by forging documents with their signatures, having Plaintiffs sign checks and documents and then filling in the information afterwards, intentionally misdirecting documents to his home address instead of Plaintiffs' address, altering documents to deceive Plaintiffs into thinking that their accounts were doing better than reality, and making material misrepresentations and/or omissions about transactions or the consequences of the transactions. *See* Record Documents 9, 183, & 183-6. Haddox maintains that all of Plaintiffs' Louisiana law claims are perempted, meaning time-barred, by Louisiana Revised Statute § 9:5606. Record Document 176-1, pp. 11–15. Alternatively, Haddox argues that Plaintiffs have no evidence of fraud and has passed the burden to Plaintiffs to identify evidence that would create a genuine dispute of material fact. *Id.* at 15–16.

---

[2] When discussing Louisiana law, Plaintiffs do not mention churning but argue about how Haddox allegedly committed fraud and breached his fiduciary duties. Record Document 183, p. 13.

[3] This shift appears in light of this Court's prior Memorandum Ruling defining annuities as insurance under Louisiana law and finding these annuities exempted under the TSA. *See Sistrunk*, 2020 WL 2549699, at *9–10. Similarly, the definition of securities in Louisiana excludes

> "[a]ny *insurance* or endowment policy or *annuity contract* under which an insurance company promises to pay a fixed number of dollars either in a lump sum or periodically for life or some other specified period [and] *any variable annuity contract* as provided for and regulated under Title 22 of the Louisiana Revised Statutes of 1950 and issued by a life insurance company licensed to do business in the state of Louisiana.

La. R.S. § 51:702(15)(b)(i) (emphasis added).

A. Louisiana Revised Statute § 9:5606

Haddox mainly contends that all of Plaintiffs' Louisiana law claims are perempted by Louisiana Revised Statute § 9:5606, which governs actions against insurance brokers. Section 9:5606(A) provides:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. R.S. § 9:5606(A). Section (D) of this statute clarifies that "[t]he one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods" that "may not be renounced, interrupted, or suspended." *Id.* § 9:5606(D). According to the Louisiana Civil Code, peremption is "a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."[4] La. Civ. Code art. 3458.

First, the Court agrees that Plaintiffs' claims against Haddox are subject to the peremptive periods found in § 9:5606. All of the claims alleged arise from Haddox's actions in purchasing annuities. *See* Record Document 9. Annuities are classified as a form of insurance by Louisiana law. La. R.S. § 22:47(17). Thus, Plaintiffs' claims against Haddox arise from an engagement to provide insurance services and, consequently, "fall within the purview" of § 9:5606. *Klein v. Am. Life & Cas. Co.*, 2001-2336 (La. App. 1 Cir. 6/27/03); 858 So. 2d 527, 531 (applying the peremptive periods of § 9:5606 to the claims of a plaintiff who purchased annuities, even though the lawsuit

---

[4] Peremptive periods, as defined in Louisiana Civil Code article 3458, are the Louisiana equivalent of statutes of repose. *See CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014).

initially arose out of an agreement to provide estate planning services rather than insurance services). Next, the Court will separately address the application of § 9:5606 to Plaintiffs' breach of fiduciary duty and fraud claims.

1. *Breach of Fiduciary Duty*

Plaintiffs argue that a claim for breach of fiduciary duty under Louisiana law is subject to a ten-year prescriptive period. Record Document 183, p. 18. However, § 9:5606, governing actions against insurance brokers, has no exception "for breach of fiduciary duty claims, only fraud claims." *Cerullo v. Heisser*, 16-558 (La. App. 5 Cir. 2/8/17); 213 So. 3d 1232, 1237–38. Therefore, the peremptive periods in Subsection A of § 9:5606 apply. *See id.* Plaintiffs' theory of breach of fiduciary duty centers on a finding of churning. Therefore, the Court finds that the time limit to bring a claim for breach of fiduciary duty began when Haddox allegedly churned Plaintiffs' accounts.

In a prior opinion in this case, the Court discussed in great length that a claim for churning under a statute of repose begins to run the moment the violation or sale occurs. *See Sistrunk*, 2020 WL 2549699, at *5–8. Considering that a statute of repose is the common law equivalent to Louisiana's peremptive period, the Court applied the same starting point for the three-year peremptive period set forth in § 9:5606(A). *Id.* at 9. For the same reasoning outlined in the Court's prior Memorandum Ruling, the Court finds that the act of churning occurs the moment the violation or sale occurs. *See id.* All of Haddox's purchases occurred more than three years before Plaintiffs filed their complaint.[5] *See* Record Documents 1 & 9. As such, Plaintiffs' breach of fiduciary duty claim is barred by the three-year peremptive period set forth in § 9:5606(A).

---

[5] Plaintiffs assert that the last transaction undertaken by Haddox occurred on March 5, 2015, when Haddox allegedly acquired three National Western Life Insurance Company annuity accounts in

Plaintiffs attempt to prevent the application of § 9:5606 to their breach of fiduciary duty claim by arguing that churning is a continuing tort and therefore that any peremptive periods did not begin to run until the churning ceased. Record Document 183, pp. 12–13. However, in Louisiana, the continuing tort doctrine is a suspensive principle and is therefore inapplicable to claims governed by the peremptive time limitations in § 9:5606. *Sitaram, Inc. v. Bryan Ins. Agency, Inc.*, 47,337 (La. App. 2 Cir. 9/19/12); 104 So. 3d 524, 530. "As such, if a claim is not filed within three years of the alleged act, it is extinguished by peremption, regardless of whether or not it was filed within one year from the date of discovery." *Id.* Consequently, the continuing tort doctrine or other suspensive principles cannot prevent the application of § 9:5606's peremptive period to Plaintiffs' breach of fiduciary duty claim. Therefore, § 9:5606's three-year peremptive period bars Plaintiffs' breach of fiduciary duty claim.

2. *Fraud*

Plaintiffs argue that their fraud claim is not subject to the peremptive periods of § 9:5606. Record Document 183, pp. 14–15. Plaintiffs correctly point out that "[t]he peremptive period provided in Subsection A of [§ 9:5606] shall not apply in cases of fraud, as defined in Civil Code Article 1953." La. R.S. § 9:5606(C). Claims of fraud brought under § 9:5606 are instead subject to a liberative prescriptive period of one year as set forth in Louisiana Civil Code article 3492. *Shermohmad v. Ebrahimi*, 06-512 (La. App. 5 Cir. 10/31/06); 945 So. 2d 119, 122; *see Baudy v. Adame*, 441 F. Supp. 3d 293, 301–03 (E.D. La. 2020). Under article 3492, prescription begins to run from the day the injury or damage is sustained, meaning when "the damage has 'manifested

---

Plaintiffs' names. Record Documents 183-7, 183-8, & 183-9. The original complaint was filed on April 16, 2018. Record Document 1.

10

itself with sufficient certainty to support accrual of a cause of action.'" *Shermohmad*, 945 So. 2d at 122 (quoting *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993)).

Here, the Court finds that Plaintiffs' cause of action for fraud did not arise until January 26, 2018, when Plaintiffs allege to have discovered the fraudulent conduct. Record Document 9, ¶ 123. Plaintiffs claim to be unaware of many of the annuity purchases or the harm that resulted from the purchases until 2018. *See* Record Documents 9 & 183-6. Viewing the facts most favorably to Plaintiffs, the Court finds that it is reasonable for Plaintiffs, as unsophisticated investors, to rely on their broker to act in their best interests such that the damage did not manifest itself until January 26, 2018. Therefore, the Court finds that Plaintiffs timely filed their Louisiana law fraud claim.

Alternatively, if Plaintiffs' fraud claim accrued over a year before they filed suit, the Court finds that the doctrine of *contra non valentem* suspended the running of prescription until January 26, 2018. *See Baudy*, 441 F. Supp. 3d at 303. The Louisiana Supreme Court has tolled liberative prescription pursuant to *contra non valentem* in four situations:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; [or]
>
> (4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Fontenot v. ABC Ins. Co.*, 95-1707 (La. 6/7/96); 674 So. 2d 960, 963.

After reviewing the arguments of the parties and the evidence in the record, the Court concludes that the third category of *contra non valentem* applies to this case. Viewing the facts favorably to Plaintiffs, they did not uncover Haddox's alleged fraudulent conduct until January 26,

2018, because Haddox hid and manipulated account statements to prevent Plaintiffs from discovering any damage. *See* Record Documents 9; 28-1, pp. 8, 46; & 183-6. Further, Haddox was in a position of trust in which Plaintiffs, as unsophisticated investors, trusted that he would act in their best interests. Churning is "particularly difficult to detect" for unsophisticated investors. *See Escalon v. World Grp. Sec., Inc.*, No. 5:07-CV-214-C, 2008 WL 5572823, at *4 (N.D. Tex. Nov. 14, 2008). "Degree of sophistication of the investor is usually a fact issue." *Id.* As such, the Court finds that prescription for Plaintiffs' fraud claim was tolled until January 26, 2018. Therefore, Plaintiffs timely filed their Louisiana law fraud claim on April 16, 2018.[6] Record Document 1.

B. Evidence of Fraud

In his motion for summary judgment, Haddox argues that in the event that Plaintiffs' fraud claim is not perempted, he is still entitled to summary judgment because Plaintiffs have failed to produce any evidence of fraud. *See* Record Document 176-1, pp. 11–12. Therefore, the burden shifted to Plaintiffs to present evidence of fraud to create a genuine issue of material fact for trial. Here, Plaintiffs claim that Haddox committed fraud by churning their annuity accounts, forging annuity applications, having Plaintiffs sign checks and annuity applications and then filling in the information afterwards, intentionally misdirecting account statements to his home address instead of Plaintiffs' address, altering account statements to deceive Plaintiffs into thinking that their accounts were doing better than reality, and making material misrepresentations and/or omissions about transactions or the consequences of the transactions.

---

[6] The Court finds support in this reasoning from "the long-established principle of law that one should not be able to take advantage of his own wrongful act." *Baudy*, 441 F. Supp. 3d at 303; *see Nathan v. Carter*, 372 So. 2d 560, 562 (La. 1979); *see also Corsey v. State, Through Dep't of Corrs.*, 375 So. 2d 1319, 1324 (La. 1979); *Hyman v. Hibernia Bank & Trust Co.*, 139 La. 411, 71 So. 598, 600 (1916).

Fraud in Louisiana is a "misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. Plaintiffs argue for the application of delictual fraud to the present case. The elements of a cause of action for delictual fraud are "(a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." *See, e.g., Guidry v. United States Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999) (citations omitted).

Louisiana recognizes fraud through silence or omission when there is a duty to speak. *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992). This duty exists when there is a fiduciary relationship like the present case. *Id.* "Fraud through omission or silence is, by its very nature, difficult to plead with particularity . . . [b]ecause it does not involve an affirmative misrepresentation, it often does not occur at a specific place or precise time, or involve specific persons." *See* Baudy, 441 F. Supp. 3d at 300 (cleaned up).

First, Plaintiffs argue that the act of churning constitutes fraud when the broker acts with the intent to defraud. Churning itself is a deception. *See Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 324 (5th Cir. Unit A Feb. 1981) (abrogated on other grounds by *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985)). "Churning is a term of art which is actually a synonym for overtrading." 36 Am. Jur. 1, *Broker-Dealer Fraud: Churning* § 2 (2020). In order to establish churning, a plaintiff must show:

(1) the trading in his account was excessive in light of his investment objectives;

(2) the broker in question exercised control over the trading in his account; and

>   (3) the broker acted with the intent to defraud or with reckless and willful disregard for the investor's interests.[7]

*Id.*

Plaintiffs have presented evidence that they had a conservative investment strategy. Record Document 9, ¶s 11–12. According to Plaintiffs, Haddox engaged in multiple transactions from which he received large commissions and Plaintiffs incurred substantial early termination fees, which a reasonable jury could find excessive considering a conservative strategy. Courts have found that excessive trading by itself can be enough to satisfy the third element because churning is deceptive by nature, especially when the broker receives a commission from the transactions. *See Escalon*, 2008 WL 5572823, at *5. Therefore, the Court finds that there is a dispute of material fact as to whether Haddox performed his duties as a broker in good faith or with the intent to generate commissions for himself through excessive annuity transfers.

Regarding the second element, Haddox argues that Plaintiffs controlled the accounts by directing or approving every transaction he undertook. *See* Record Document 176-3. However, Plaintiffs filed an affidavit stating that they did not sign some of the annuity applications. Record Document 183-6. Additionally, Plaintiffs contend that Haddox would have them sign documents and checks without fully informing them what they were signing and then Haddox would fill in the information after the fact. *See id.* Further, Plaintiffs aver, as unsophisticated investors, they trusted Haddox to act in their best interests. *Id.* ¶ 5. According to Plaintiffs, Haddox misrepresented and omitted material facts about the substance of the accounts, such as Haddox's commissions and the early termination fees. *See* Record Documents 9 & 183-6. At this point, the Court finds that there is a dispute of material fact as to whether Haddox or Plaintiffs controlled the accounts. Considering

---

[7] The parties do not dispute the elements of churning. The Court has no reason to think that a Louisiana court would depart from these elements.

the evidence in the record and accepting Plaintiffs' version of facts, a jury could reasonably conclude that Haddox exercised control of the accounts through fraud. As such, Plaintiffs have presented evidence of churning, which a reasonable jury could find to be fraudulent.

In addition to the act of churning being evidence of fraud, Plaintiffs have submitted additional evidence that further supports a claim for fraud. Plaintiffs allege that Haddox intentionally misdirected account statements and other documents to his home address to cover up his actions and so he could manipulate the documents to deceive Plaintiffs into thinking their accounts were doing better than reality. *See* Record Documents 9 & 183-6. Plaintiffs contested Haddox's assertion that he always forwarded the documents to them. *See* Record Document 183-6, ¶ 34. Besides Plaintiffs' affidavit, they attached multiple documents where there appears to be alterations when comparing them to the originals. *Compare* Record Document 28-1, p. 8 *with* p. 46. For example, Plaintiffs identified a Jackson account statement that had a blank for the address spot under Glynn Sistrunk's name and states that there was a balance of $120,364.91 with $6,227.20 being credited interest. Record Document 28-1, p. 8. According to Plaintiffs, they recently requested Jackson send the same statement directly to them, which showed Haddox's address listed under Glynn Sistrunk's name and states that the balance is $114,147.00 with no credited interest.[8] *Id.* at 46.

Additionally, in Plaintiffs' complaint and affidavit, Plaintiffs allege that Haddox omitted material information regarding the annuity accounts and never explained the consequences of liquidating old accounts and opening new accounts, such as early termination fees and the commission Haddox received from each transaction. Record Document 9, ¶ 123. The Court finds that when accepting Plaintiffs' allegations as true, Plaintiffs have pointed to sufficient evidence to

---

[8] Look to Record Document 28-1 for more examples.

15

create a dispute of material fact as to whether Haddox acted fraudulently by his alleged actions and omissions as detailed above. Record Document 183-6.

Accordingly, Haddox's motion for summary judgment is **DENIED** as to Plaintiffs' fraud claim but **GRANTED** as to Plaintiffs' breach of fiduciary duty claim and standalone churning claim under Louisiana's Blue Sky Laws.

### IV. Remaining Claims

Along with their claims asserted under federal securities law, Louisiana law, and Texas law, Plaintiffs also allege that Haddox is liable for breach of contract, unjust enrichment, civil conspiracy, misrepresentation, and negligence. Record Document 9, pp. 133-63. However, neither the complaint nor Plaintiffs' opposition brief specifies whether the causes of action are alleged under the laws of a particular state or federal common law. Further complicating the vagueness of the complaint is its length, containing over 150 paragraphs in its 45 pages.

Federal Rule of Civil Procedure 8 mandates that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "That statement needs to be sufficient to 'give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests[.]'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 287 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 8 requires a complaint to "do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. United States Dep't of Hous. and Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). A complaint "must put the defendant on notice as to what conduct is being called for defense in a court of law." *Id.* at 528–29.

Upon review of the complaint, the Court finds that it is so broad that it constitutes a "shotgun" pleading, which is defined as a pleading that fails "to give the defendants adequate notice

16

of the claims against them and the grounds upon which claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Here, Plaintiffs have asserted multiple claims against multiple defendants without specifying under which state's laws the causes of action arise. Further, in Plaintiffs' opposition to the motion for summary judgment, they did not provide any support for their claims of breach of contract, unjust enrichment, civil conspiracy, misrepresentation, or negligence after Haddox challenged the sufficiency of the evidence underlying these claims. As such, the Court considers these claims abandoned. *See Black*, 461 F.3d at 588 n.1. Therefore, Haddox's motion for summary judgment is **GRANTED** as to these claims.

V. **Objection to Plaintiffs' Affidavit**

Haddox objected to multiple paragraphs in Plaintiffs' affidavit because they contain legal conclusions and statements made without personal knowledge. *See* Record Document 190. The Court denies Haddox's objection to paragraph 34 to the extent that he objects to the statement that he did not forward misdirected documents to Plaintiffs. Plaintiffs have direct personal knowledge of what was or was not received by them. As such, the objection is denied. The Court denies the remaining objections as moot because it did not base its conclusions on the objected-to paragraphs.

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Haddox's Motion for Summary Judgment [Record Document 176] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** as to Plaintiffs' Louisiana law claim for fraud. The motion is **GRANTED** as to all of Plaintiffs' remaining claims against Haddox, and these claims are **DISMISSED WITH**

**PREJUDICE**. Plaintiffs' only remaining claim against Haddox is for fraud arising under Louisiana law.

      **THUS DONE AND SIGNED** this 31st day of March, 2021.

                                    ELIZABETH ERNY FOOTE
                                    UNITED STATES DISTRICT JUDGE